## UNITED STATES *v.* BOESE.

*(District Court, N. D. California.*   April 1, 1891)

SENDING OBSCENE LETTER THROUGH THE MAILS.
 A person cannot be convicted of mailing an obscene letter when the only evidence that it was deposited in the mail is his uncorroborated confession.

At Law

Trial of William J. Boese for sending an obscene letter through the mails contrary to Act Cong. Sept. 26, 1888. The district attorney offered to prove that the letter was obscene; that it was placed in the hands of a local officer; that the envelope did not accompany the letter, and that the prosecution would be unable to produce any evidence of the name of the lady to whom it was addressed; that the officer, by means of a decoy letter, discovered defendant, who, in the presence of three officers, voluntarily confessed that he wrote the letter, and deposited it in the mails. Defendant's counsel moved for an acquittal on the ground that the offered evidence, if true, would be insufficient to justify a conviction. The court directed the jury to return a verdict of not guilty.

*C. A. Shurtleff,* Asst. U. S. Atty.

*Carroll Cook,* for defendant.

HOFFMAN, J. Whether the depositing of an obscene letter in the post-office with no address to it at all would constitute an offense under that act of June 18, 1888, amending section 3893, Rev. St. U. S., it is not necessary now to decide    I do not contend or suppose that the sole object of the act was to protect the feelings of parties to whom the obscene letter might be addressed. I do not think it was to protect the post-office clerks, either, from being contaminated by reading such objectionable communications. I suppose, though, that, should it appear that a man had a mistress or other person, and that they indulged in such letters and corresponded with each other, and each were sending the letters without objection, and in fact pleasure, I think they could be both indicted and punished for using the mails and carrying on the correspondence. It is not necessary that the feelings of the party to whom it is addressed be lacerated; nor would the fact that it was a pleasure and gratification to the person to receive it,—that would not absolve the prisoner from punishment for sending it on through the mail. But all the cases seem to show that further proof must be exacted in addition to the confession, and there must be corroborative circumstances, not amounting by themselves to absolute proof, but taken with the confession, and be sufficient to satisfy the jury beyond a reasonable doubt that a crime has been committed, and that the prisoner is the guilty person; because, if full proofs of the commission of crime were exacted, they might not be sufficient of themselves, wholly irrespective of the confession, to establish beyond a doubt that the crime has been committed; but in some way the jury has got to be satisfied, either by con-

fession and corroborative proof or by corroborative proof alone,—some way,—of the guilt of the defendant. It is wholly unreasonable to suppose that a jury could convict a person of crime unless they reached the conclusion that a crime had been committed, and that the defendant is the guilty person. I do not think it necessary to delay the decision of this case, but some light might have been thrown upon it, as to the degree and sufficiency of the corroborative proof, by referring to those cases where an accomplice has been put upon the stand, and where the law directs—sometimes the statute, and always the instructions of the court—that it is not safe to convict a person of crime upon the unsupported testimony of an accomplice. The degree of corroboration that the accomplice must receive must be treated of in many of those cases, and if the question were to arise as to what the jury should accept as the statutory corroboration, or the corroboration required by law, those cases would have to be explored. But here I see no proof whatever. The body of the offense is the putting of this letter in the mail. Of course a person may write as many such letters as he pleases, and send them by hand. Providing he does not use the mail for the purpose, the offense has not been committed that we have jurisdiction to punish. It is no corroboration to admit that he did write the letter, and that it is in his handwriting, which could be proved irrespective of his confession, I apprehend, by a comparison of the handwriting,—the writing which he made and comparing that with the letter, the handwriting of the obscene letter,—and by the fact that he knew the contents— must have known the contents—of the obscene letter, because he applies to the boy and gets the decoy letter in reply, which is found in his possession. Those facts can be proved independently of relating a single word that fell from his lips by the witnesses. But that does not go to the proof of the *corpus delicti*. Did he use the mail? On that there is not a particle of evidence. The party to whom the letter is addressed is not here to testify. The officer can only tell that the person who gave him the letter had stripped off the envelope, and that would be hearsay, and his testimony would be refused admission if offered. All the young man who appears to be affianced to this young lady can tell is what the mother of the young lady told him. He does not know that it was received through the mails; nothing tending to show that he could testify on that point at all. Nobody can testify to it, that I can see, excepting the person who took it from the box, or to whom it was delivered,—the father of the young lady. The mother, even her testimony would probably be hearsay. She did not know anything excepting what her daughter told her,—that that letter had just arrived. So that the whole testimony appears to be barren of any positive proof that this letter was ever sent through the mail. That constitutes the essence of the crime, and we must not be led away by our abhorrence of this gross and senseless outrage that has been perpetrated, and we must not punish a man for sending a libelous communication or making obscene or improper proposals unless he uses the mail for the purpose. The rest the state law will take care of. We have nothing to do with

it, except, as I have said, to prevent the mails being used as a medium for carrying on such correspondence.

Supposing all you say you can prove were proved, and I were to charge the jury, as I certainly would, that they must be satisfied that this letter was mailed, what proof would they have, what solitary fact tends to show that, in this case, independently of this confession? The *corpus delicti*, therefore, rests entirely upon his confession. There is no proof that this letter went through the mail; not a particle. It was answered through the mail, by whom we do not know; and it was taken out of the mail, (the decoy letter was, by him,) but the original letter, which led to the writing of the decoy, was not proved by a *scintilla* of proof to have been mailed. It is not necessary that there should be some proof, or half proof; but that there must be some corroborative circumstances, when the existence of the crime itself depends on a confession, is a fundamental proposition; and, unless the jury was satisfied of that fact by competent proof, a verdict of acquittal must follow. You cannot punish a person unless you are satisfied beyond a reasonable doubt that a crime has been committed, and also that he is the only one who committed it. I do not know that there is anything more to be said about it. Considering all the proofs that you have presented or are in your power to produce, I do not see a particle of proof as to how the letter reached that young lady's hand, and her mother's, etc., and found its way into the policeman's possession; nothing, I say, except his confession.

A good many of the decisions turned upon the general idea of the caution with which confessions should be received. The rule does not stand upon the ground merely that the testimony is unreliable, and liable to mistake, or that it is given under circumstances of duress, or something approaching duress. The slightest thing, say, "You had better confess;" "Make a clean breast of it,"—causes a confession to be rejected. Why? Not because it affords a reasonable ground that an innocent person at such invitation confesses himself guilty of a crime which he never committed, because a rational person can see that no innocent person would be induced to say that he was guilty of a crime of which he was innocent, but the law will not allow a confession to be extracted from a person unless under the fullest guaranty that it is spontaneous and free, and without any influence brought to bear upon him; not that it raises a presumption that perhaps a person has confessed a crime of which he is innocent, but because the law won't allow it. There are now no thumb-screws, and those practices which prevailed on the continent, so no one can betray him but himself; and unless it is spontaneous beyond all doubt, and voluntary, it is rejected, as I say, not because the confession may not be true, but because the law will not allow what falls from a prisoner to be received in evidence, on the ground that he is not bound to betray himself. Perhaps they press it a great deal too far, and even by the state statute here and elsewhere the committing magistrate is bound to caution the man that he need not answer any questions; that he has a right to hold his peace; and that, if he does so answer, his con-

fessions will be used against him; and it must appear that he did so
caution and advise the prisoner before he made his confession or state-
ment, before it can be used against him.    It shows the tenderness of
the law, and many of these authorities treat of the point as to when the
confession shall be received in evidence.    That has nothing to do with
this case.    I doubt not that you would be able to show from Mr. Irving
and those other gentlemen that this confession was entirely spontaneous,
and that he was not induced to make it by appealing to his hopes, or
anything else.    That could be shown when the cause was tried, but the
law says that a confession, no matter how freely given, shall not be used
unless it is shown that a crime has been committed.    As I say, I look in
vain in the proofs you have offered for any corroborative circumstances
to show that that letter was dropped by him into the mail for transmis-
sion.    That he wrote it I have no doubt.    I have no moral doubt that he
dropped it into the mail.    That he wrote it may be a very reprehensi-
ble act.    It is no offense under the act of congress, and no act of which
this court has jurisdiction; and, striking out his confession, I do not see
a particle of evidence that would suggest whether it was sent by express
or dropped by himself under the door of her residence, or sent by a mes-
senger boy, or anything that throws the least light as to how it reached
her, except his confession that he mailed it.    And even the envelope,
which probably would have been accepted as sufficient corroboration,—
that is, the stamp, with the evidence of the post-office of cancellation on
the stamp, showing that it passed through the post-office,—that might be
sufficient, but even the envelope is not here, and, if justice fails in this
case, (as I believe it does and will,) it is the fault of those people who
had the means and knowledge of making the proof so strong as to prove
conclusively the man's guilt.    From what motives?    It is suggested
from motives of delicacy; but a veil of secrecy has been thrown over this
whole case, and the court is invited to protect these people who are full
of fanciful horror of notoriety or exposure.    The prosecution is not to
blame for it, or the court.

If this case had any corroborative proof I would be inclined to leave
it to the jury.    It would be well to look at the cases that require the
jury to accept the proof of accomplices.    I do not suppose they have
full proof of the man's crime or they would not put the accomplices
on the stand; but it must be to satisfy the jury that the testimony is
true beyond a reasonable doubt.    If I told the jury, "Gentlemen, the
confession must be corroborated in this matter, so far as it relates to
the *corpus delicti*, or that the crime has been committed, and I see no
proof of that whatever," and I should charge them that way, what
is the use of detaining them?    I might as well instruct them to render
a verdict right now; and, if I am satisfied that the circuit court would
grant a writ of error, and set the verdict aside if rendered, there is no
use of going through a proceeding which I see would be abortive and
useless at this time.    I do not know of any technical or other objection
to the court saying, at the beginning of the cause, upon the district at-
torney's opening:    "If the district attorney proves to your absolute sat-

isfaction all that he says he can prove, still the proof would be defective for the want of a certain fact which he is bound to establish,"—say so at the beginning and say so at the end,—I see no objection to it, and I do not know that you want to try a case if you are satisfied that I am going to treat it that way. If we once get into the merits, Mr. Cook made a threat to me that he had another defense,—that his client was not responsible for his action; that he was insane.

*Mr. Cook.* I think the letter is pretty good proof of that.

*The Court.* I don't want to go into the question of insanity. The jury will come in to-morrow morning, and I will tell them that if the facts stated were proved no conviction could be had.

Here a recess was taken until the next day, at 11 A. M.

HAWLEY, J., (*charging jury.*) You have been sworn to try this case. Judge HOFFMAN, upon hearing the statement of the district attorney, setting forth the facts which he expected to prove, has become convinced that there is not sufficient corroborative evidence to justify a jury in finding a verdict of guilty, and that it would be his duty to instruct the jury to find a verdict in favor of the defendant. As Judge HOFFMAN is unable to be present to-day, I am here simply to speak for him, to announce to you his conclusion in the matter, and to instruct you to appoint some one of your number as foreman, and to find a verdict of not guilty.

The jury thereupon returned a verdict of not guilty.