## REPUBLIC OF HAWAII *vs.* SAKU TOKUJI.

### EXCEPTIONS.

HEARING, SEPTEMBER 27, 1894.    DECISION, OCTOBER 15, 1894.

JUDD, C.J., BICKERTON AND FREAR, JJ.

Circuit courts may grant new trials in criminal cases.

Verdict held supported by evidence of an extra-judicial confession corroborated by proof of the *corpus delicti*.

Evidence that a witness had previously lived under a different name is irrelevant and inadmissible for the purpose of discrediting him.

A motion for a new trial on the ground of newly discovered evidence should be filed within ten days of the trial.

A new trial should not be granted merely because a witness for the prosecution stated afterwards that his testimony was false, especially if there is no reason to believe that a new trial would result differently.

OPINION OF THE COURT, BY FREAR, J.

This case comes here from the Second Circuit on defendant's exceptions to the overruling of his two motions for a new trial, he having been found guilty, by a unanimous verdict, of maliciously burning a field of cane.

Before argument on the merits it was moved for the prosecution that the exceptions be dismissed, on the ground that the circuit courts have no jurisdiction to entertain motions for new trials in criminal cases.

Such was the ruling of this Court in 1869 in *The King vs. Cornwell*, 3 Haw., 154, *The King vs. Kaona, Ib.*, 118, and *The King vs. Apuna, Ib.*, 166, and when after a uniform practice for twenty years in pursuance of those decisions, the question was again raised, the same court, though consisting of an entirely different personnel, followed the earlier cases in *The King vs. Reeve*, 7 Haw., 313, 336, and *The King vs. Akana, Ib.*, 549. This practice was adhered to until the Act to Re-organize the Judiciary Department went into effect, January 1, 1893, since when, until the present time, although the practice was not expressly altered by that Act, the Circuit Judges have, we believe, entertained such motions whenever presented, and exceptions to their rulings thereon have been considered by this Court, without so much as a doubt having been suggested as to the propriety of doing so.

We do not feel at liberty to overrule the former decisions, although the reasoning upon which they were founded is not altogether satisfactory. They were not contrary to any express statute, and the court was then, as it is not now, free to disregard the common law, and to base its decisions, as it no doubt did largely in those cases, upon considerations of expediency and convenience in view of the then existing conditions.

But we are of the opinion that under the Judiciary Act of 1892, the circuit courts are courts of general and unlimited jurisdiction clothed with the powers inherent in such courts, one of which powers is that of granting new trials. *Bartling*

*vs. Jamison,* 44 Mo., 141 ; *Commonwealth vs. McElhaney,* 111 Mass., 439.

In the leading case of *The King vs. Cornwell,* the court avoided passing in direct terms upon the question whether the circuit court had "general and unlimited jurisdiction in cases cognizable before them," but it did hold that "their jurisdiction is precisely and fully defined in the statutes," and that they had no right to hear motions for new trials in criminal cases, because such right was not "expressly granted" to them, thereby implying that they were not courts of general jurisdiction, which require no grant of such power. It was further held that the Supreme Court, although not the court holding the trial, and not expressly given the power by statute, might nevertheless grant new trials in such cases under its statutory "general superintendence of all courts of inferior jurisdiction." It is clear that the circuit courts were then regarded as, at least for some purposes, courts of inferior jurisdiction.

The Judiciary Act above referred to undoubtedly wrought a great change in the character of such courts. Prior to that Act the Supreme Court was a court of original as well as appellate jurisdiction. All the Justices thereof might sit together even in jury cases, and did in fact so sit until the year in which the Cornwell case was decided, since which time, except for a number of years in capital cases, it has, when sitting as a court of original jurisdiction, been presided over by a single Justice. When so sitting it was regarded as a court of unlimited jurisdiction (the only such court on this island), and as such exercised the power of granting new trials in criminal cases. The Circuit Court on this island had been abolished in 1864, and the office of Circuit Judge, who then had only limited appellate jurisdiction in chambers, was also abolished in 1874. On the other islands, the circuit courts were presided over by a Justice of the Supreme Court sitting with or without a Circuit Judge. Their jurisdiction was limited to some extent, though not so much so as the jurisdiction of the Circuit Judge when sitting alone in

chambers. For instance, the circuit courts could not enforce maritime liens and hypothecations, or try suits against the Government. Their jurisdiction when first established was more limited than at the date of the Cornwell case. Until 1860, for instance, they could not try capital cases. The Supreme Court when sitting as an appellate court sat in banco and heard exceptions from the supreme and circuit courts presided over by a single Justice.

The Judiciary Act of 1892 left the Supreme Court almost solely an appellate court to sit in full bench, and took from it nearly all original jurisdiction, to which class of jurisdiction the granting of new trials properly belongs. At the same time the circuit court on this island was re-established with powers substantially as large as those previously possessed by the Supreme Court when sitting at term as a court of original jurisdiction presided over by a single Justice, which, as we have seen, exercised the power of granting new trials in criminal cases. The powers of the circuit courts on the other islands were also enlarged to nearly, if not quite, the extent of those granted to the circuit court on this island. All the circuit courts were also given all such powers, besides those expressly enumerated, as "may be necessary for the promotion of justice in matters pending before them." (Sec. 42.) Without going into greater detail, it is obvious that the Legislature intended, and sufficiently declared their intention, that the circuit courts were to be after January 1st, 1893, if they had not been before, courts of general jurisdiction, and not courts whose "jurisdiction is precisely and fully defined in the statutes." It intended to raise the courts of higher original jurisdiction on the other islands to the level of that on this island rather than reduce the latter to the level of the former. The motion to dismiss the exceptions is overruled.

Defendant's first ground of exception is that the verdict was contrary to the evidence. This consisted in part of an extra-judicial confession alleged to have been made by defendant. It is contended that evidence of such confession is not

sufficient for conviction unless corroborated by other proof of the *corpus delicti*, and that there was no such other proof. Conceding for the purpose of this case what does not appear to have been invariably held in other courts, that the principle of law contended for is correct, we are of the opinion that such corroborative evidence was adduced in the present case. Indeed, there was positive and undisputed evidence that the cane field was set fire to in three distinct places at about the same time near midnight and that on the following day there was found near by some wicking which smelled oily and had matches rolled up in it. This was sufficient evidence from which the jury might infer the *corpus delicti*, that is, a malicious burning of the field of cane by some one. See Am. & Eng. Encyc. of Law, vol. 4, p. 309, and vol. 3, p. 445, n. 2. The alleged confession of the defendant was then properly introduced to connect him with the *corpus delicti*. There was also other evidence, of little value it is true, tending to connect the defendant with the *corpus delicti*. A few days before the fire the defendant, who was a contract laborer of the company whose cane was burned, had been arrested and fined for refusal to work, and there was (disputed) evidence that at the time of the fire he was not at his quarters but was soon afterwards at the place of the fire. The guilt of the accused was not established as clearly as might be, but there was sufficient evidence to sustain the verdict.

A second ground of exception was the refusal of the trial judge to allow defendant's counsel to ask a witness for the prosecution, with a view to discrediting him, under what name he lived while in Hilo. Evidence to be admissible for the purpose of affecting the credibility of a witness must be such as bears directly upon his character for truth and veracity. Otherwise it would be irrelevant. It is not competent if it merely tends to disgrace the witness. We do not see how the fact that a witness lived under a different name at another time and place could affect his credibility,—even if it would necessarily tend to disgrace him. See Wharton, Cr. Ev. Sec. 486 ; 1 Greenl. Ev. Sec. 458.

Two months after the trial the defendant filed a second motion for a new trial based upon alleged newly discovered evidence consisting mainly of the statement of a Japanese witness for the prosecution that the testimony given by him at the trial was false. The motion was properly overruled, because not filed within ten days of trial. The *King vs. Reeve, supra.* Nor could it be sustained on the merits. The most that the affidavits in its support show is that one of the witnesses perjured himself at the trial and this is shown only by the statement of the perjurer himself. On a second trial, should one be granted, the prosecution would presumably proceed without calling the witness, whose testimony was mainly cumulative or corroboratory, and there is no reason to suppose that a new trial would result differently because of the absence of such witness.

The exceptions are overruled.

*A. G. M. Robertson, Deputy Attorney-General,* for the prosecution.

*V. V. Ashford* and *W. A. Kinney,* for defendant.

