# TERRITORY *v.* LIONEL R. A. HART.

## No. 1083.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.
HON. W. H. HEEN, JUDGE.

ARGUED MAY 20, 1918.                DECIDED MAY 29, 1918.

COKE, C. J, QUARLES AND KEMP, JJ.

APPEAL AND ERROR—*exception—harmless error.*

A motion by defendant at the close of the prosecution's case for an instructed verdict in his favor is equivalent to a demurrer to the evidence and where the motion is erroneously overruled the error becomes harmless if the defendant fails to rest his case on the evidence for the prosecution and introduces evidence in his own behalf which, with the evidence for the prosecution, justifies the verdict against him.

EMBEZZLEMENT—*control by accused with owner's consent.*

Where the defendant buys stock on margin for a client and controls the account therefor, the client instructing him to hold accruing dividends to accumulate and apply on the purchase price and to not sell the stock, the control of the stock is in the defendant with the consent and authority of the owner within the meaning of the provisions of the statute defining embezzlement.

SAME—*conversion—use and benefit of accused.*

The defendant bought capital stock of a corporation for a client on margin from a broker in New York; the defendant controlled the account for the stock with the consent of his client and without the latter's consent had the account for the stock sold and the realization therefor credited to another account for which defendant was liable: Held, that the conversion was for the use and benefit of the defendant within the meaning of the statute defining embezzlement.

SAME—*jurisdiction.*

Where the defendant, operating in the Territory of Hawaii, cabled from Honolulu to New York directing a broker in New York to sell certain stock which was in his control for a client, the proceeds of which defendant embezzled, the crime being com-

menced in the Territory of Hawaii the trial court in Hawaii has jurisdiction to indict, try and punish the defendant for such crime.

EVIDENCE—*criminal law—cross-examination of accused.*

Where a defendant takes the witness stand in his own behalf he may on cross-examination be asked about any matter pertinent to the issues although he has not testified on direct examination as to all of the things about which he is asked.

. OPINION OF THE COURT BY QUARLES, J.

The defendant was indicted in the circuit court of the first circuit charged with embezzling certain moneys intrusted to his care and keeping by the owner, O. A. Bierbach, without the consent of said owner. At the trial evidence was introduced tending to prove the following facts: The defendant, a stockbroker in Honolulu, was dealing with Stoneham & Co., brokers of New York City, carrying a large number of accounts for others, among them one for Mr. Bierbach. February 1, 1916, Bierbach, through the defendant, purchased 20,000 shares "Wilbert mining stock" on margin, paying thereon $650—one-third of the purchase price. This was a dividend-paying stock, paying a dividend of $200 quarterly, and the Bierbach account was credited with dividends thereon as follows: $200 February 15, $200 May 15, and $200 August 15, 1916. The account was controlled by defendant, Bierbach having no dealings directly with Stoneham & Co. touching it. Bierbach instructed the defendant to hold the dividends accumulating so as to apply on the balance of purchase price of the stock and instructed him to not sell the stock without orders so to do. Upon one occasion the stock dropped on the market and on demand of Stoneham & Co., through the defendant, Bierbach made, through the defendant, a payment of $50 or $60 on account of this Wilbert mining stock. October 15, 1916, Stoneham & Co., on cabled order from the defendant, sold this stock for the sum of $532.38 and transferred the Bierbach ac-

count to the account of W. T. G. Allen. This sale and transfer were made without the knowledge or consent of Bierbach and contrary to the directions that he had theretofore given the defendant. Bierbach had informed the defendant that when the stock was fully paid off he wanted the certificate therefor brought to Honolulu. In November, 1916, Bierbach saw the defendant and had a talk with him about the stock and in the conversation defendant told him that he would bring the stock home soon. About two weeks after this conversation the defendant left Honolulu and went to Japan. The following July the indictment in this case was presented by the grand jury and in the same month the defendant was arrested in San Francisco on the charge contained in the indictment. At the time of his arrest the defendant admitted that he had destroyed his books three days before he left Honolulu; that he converted to his own use the value of the Bierbach stock and some stocks belonging to others; that he ran away to Japan to avoid arrest and said he would plead guilty. This confession or admission was made in the presence of Chester A. Doyle and Arthur McDuffie in San Francisco. McDuffie says that defendant admitted that he embezzled the stocks, while Doyle says he admitted that he embezzled the value of the stocks. Both of these witnesses testified that defendant admitted that he had destroyed his books three days before leaving for Japan; that he went to Japan to avoid arrest; that he would waive extradition papers and would return to Honolulu and plead guilty to the charge of embezzlement. The accounts handled by defendant with Stoneham & Co. were controlled by defendant except in a few cases where the parties had the control taken from defendant and dealt directly with Stoneham & Co. Mr. Allen, to whom the Bierbach account was transferred, testified that he had had business transactions with defendant since 1911

and had bought through defendant in October, 1916, some Montana-Bingham stock; that defendant told him that he had opened an account for him with Stoneham & Co. and had bought some stock for his little girl, but witness had never exercised any control over the account. Witness testified that he had made cash advances to the defendant in 1912 but had told defendant not to consider them as loans.

During the progress of the trial the prosecution elected to prosecute defendant on the charge of embezzling the Wilbert mining stock and not the proceeds of the sale thereof (see Sec. 3796 R. L.), the correctness of which has not been questioned by the defendant.

At the close of the case for the prosecution the defendant moved for an instructed verdict in his favor on the grounds: That the evidence outside of the confession testified to did not establish the *corpus delicti;* that the charge as laid in the indictment had not been proven; that there is a variance between the allegations of the indictment and the proofs in that the indictment charged that Bierbach was the owner of the moneys alleged to have been embezzled and the proofs show that Stoneham & Co. were the owners; that the evidence shows that the defendant was never intrusted with or had possession, control, custody or the keeping of the moneys alleged to have been embezzled with the consent or authority, direct or indirect, of the owner; that the alleged owner refused to intrust the defendant with the possession, control, custody or keeping of said moneys alleged to have been embezzled; that there is no evidence that defendant ever had possession, control or custody of the moneys alleged to have been embezzled or that he ever converted the same to his own benefit; that if the evidence shows that said defendant converted said moneys that he did so for the benefit of another; that if any conversion was proved it

occurred in New York and not in the Territory of Hawaii; that the evidence fails to show that the moneys alleged to have been embezzled amounted to a valuable security within the meaning of the statute "but were merely accounts or credits on the books of a stock-broker firm." This motion was denied, to which the defendant excepted.

Mr. Lymer, attorney for defendant, took the stand as a witness, and among other things testified that he took a letter to Stoneham & Co. in New York in June, 1917, which letter was introduced in evidence as defendant's exhibit A, and that both Mr. Stoneham, and Mr. Robertson of Stoneham & Co., admitted that the letter was written by Stoneham & Co. Witness offered to testify that while in New York he investigated the reputation of Stoneham & Co. as brokers and found that it was bad and that they ran a bucket shop, but on objection this evidence was not admitted, to which the defendant excepted.

Testifying in his own behalf the defendant admitted sending the cable to Stoneham & Co. October 15, 1916, ordering them to close out the Bierbach account and transfer the realization therefor to the account of Allen; that for two or three months prior to sending this cablegram his relations with Stoneham & Co. had been strained; that owing to a decline of stock on the market a great many margins had to be increased and Stoneham & Co. threatened to throw out all of the accounts handled by him, good and bad, if the accounts were not all made good; that Stoneham & Co. held him personally responsible for all of the accounts handled by him; that his purpose in transferring the accounts of Bierbach and other clients to other parties was to try to save the good accounts as he was being threatened with the sale of all the accounts, good and bad. On cross-examination he testified that he did not inform Bierbach that he had closed the account;

that he destroyed his books before leaving Honolulu; that he closed his account with Stoneham & Co. in 1916, but could not remember the exact date; that it was a large account in the neighborhood of $30,000, $40,000 or $50,000, roughly speaking, and that he did not owe Stoneham & Co. anything when he closed his account with them.

At the close of the case the defendant renewed his motion for a directed verdict, which was overruled. The jury returned a verdict of guilty as charged and the defendant moved for a new trial raising therein every question raised by the motion for a directed verdict and by all of the exceptions taken up to that time.

The case comes here on exceptions, thirty-two in number, many of which are not of sufficient importance to discuss or mention, and we will not state any of the exceptions in full but treat all of them that we deem of importance, in a general way.

The exceptions to various rulings upon the motions for a directed verdict, to the verdict and to the order denying the motion for a new trial, that the evidence does not show that the defendant had been vested with the custody or control of the Wilbert mining stock "by the consent or authority of O. A. Bierbach, the owner thereof," are not sustained. The evidence for the prosecution shows that the defendant was vested with the control of the stock. Bierbach operated through the defendant and had no communications whatever with Stoneham & Co., and directed defendant to permit the dividends to accumulate and be applied on the purchase price and to not sell this stock. From such conduct the consent of the owner to the control of the stock by defendant is sufficiently shown. It would have been utterly foolish for Bierbach to have given these instructions if defendant was not controlling the stock and these instructions sufficiently evince the consent of Bierbach that defendant should control such stock.

Having control of the stock with the consent and authority of the owner defendant is shown by the evidence to have caused the stock to be sold. This was a conversion of the stock. It was argued that the conversion was not such as is prohibited by the statute. It was fraudulent, without authority, and done clandestinely so far as the owner's knowledge, and the facts touching the sale of the stock were fraudulently concealed from the owner.

Was it converted to the use and benefit of the defendant? The proceeds of the sale were by order of the defendant credited to the account of one in whose name the defendant was dealing and for whom he had at or about that time bought some Montana-Bingham stock, and who had made advances to the defendant. If he was owing Allen and had his account credited with the proceeds of the sale of the stock he was benefited; if he was not owing Allen but was liable to Stoneham & Co. for the Allen account he was benefited. In either event he converted the stock and converted the realization from the stock to his own use and benefit. He used it either to apply on his indebtedness to Allen or to protect his liability on the Allen account, and in either case he was benefited and Bierbach was injured. Looking at it from any viewpoint the defendant converted the Wilbert mining stock owned by Bierbach to the defendant's use and benefit. By his confession he admitted the embezzlement and should not escape the penalty therefor on the pretense that he converted the proceeds of the stock to the use of another.

The exception to the ruling denying a directed verdict at the close of the evidence for the prosecution must be overruled. The defendant by failure to rest his case on the evidence then admitted, and by introducing further evidence, strengthened the case against him. The request for a directed verdict, like a motion for nonsuit, is in the nature of a demurrer to the evidence and if the motion or demur-

rer is denied when it should be granted and the defendant by introducing further evidence completes the case against him, the error in overruling the motion or demurrer becomes harmless. The defendant by evidence showed that he controlled all of the accounts handled by him with Stoneham & Co., many in number; that he was held responsible for all of them by Stoneham & Co., and that without the knowledge or consent of Bierbach he had the Wilbert mining stock sold and the realization therefor transferred to the account of Allen at a time when his relations with Stoneham & Co. were strained, and Stoneham & Co. were threatening to sell all of the accounts handled by him, good and bad, and that he did so for the purpose of trying to save the good accounts. Under these circumstances the jury might well have found that the defendant embezzled the Wilbert mining stock (which he had controlled with the consent and authority of Bierbach, the owner), and that he converted the same to his own use and benefit without the consent of the owner.

The argument that the evidence fails to show that the stock was actually in the control of defendant, made with considerable earnestness, must fall in the face of the proven circumstances. Statements of account sent defendant by Stoneham & Co., and introduced in evidence with the consent of the defendant, showing that Bierbach had to his credit "Long-20000 Wilbert" strengthen the statement of Bierbach that he bought, through defendant, from Stoneham & Co. on margin 20,000 shares of Wilbert mining stock. It is true that no witness testified to having seen the stock in the actual possession of Stoneham & Co. This was not necessary so long as the evidence points to the fact that the stock was there with them. A broker who buys stock for a client on margin is required by law to keep the stock on hand and not to sell the same without the consent of the client (9 C. J. 546). It is well settled in New York,

where the transactions involved were consummated, that where brokers sell stock to a customer on margin the legal title to the stock is in the purchaser and the brokers are pledgees thereof for the repayment of all advances made by them in connection with the transaction, the accruing dividends going to the purchaser (*Rothschild* v. *Allen,* 86 N. Y. S. 42; affirmed 180 N. Y. 561). We adopt and follow the New York rule which would certainly bind the parties to the transactions in a civil action commenced and prosecuted in the State of New York. The defendant was the agent of Bierbach in the transaction with Stoneham & Co., of which fact the latter had notice. Where the defendant, acting as a broker, purchases by order of a client certain stocks on margin from a broker in New York for his client a fiduciary relation exists between the defendant and his client, the title to the stock purchased vests in the client, and a conversion of the stock by defendant to his own use and benefit, without his client's consent, is embezzlement.

The statements of account sent by Stoneham & Co. to defendant and introduced in evidence, and the crediting thereon of dividends paid on the stock, in the absence of any showing to the contrary, raises the proper and necessary inference that the stocks were in the hands of Stoneham & Co. for Bierbach on October 14, 1916, when defendant ordered them sold and the jury were justified in finding that the stocks were in the control of the defendant at that time. The motion for a directed verdict at the close of the case was properly denied.

The exceptions that the evidence of the confession of the defendant found in the testimony of Doyle and McDuffie was improperly admitted for the reason that the *corpus delicti* had not been proven and the motion of defendant to strike out this evidence should have been sustained must be overruled. The evidence, other than that proving the

confession, was sufficient to show *prima facie* that the crime of embezzlement had been committed and the confession was an admission that the defendant was the person who committed the crime.   Where there is evidence sufficient to show *prima facie* that the crime alleged in the indictment has been committed the confession by the defendant that he committed the crime is admissible to connect him with the crime and to corroborate the evidence proving the commission of the crime (*Republic* v. *Tokuji*, 9 Haw. 548, 551, 552).

Some of the exceptions are to rulings of the court in refusing to permit a witness for defendant to answer certain questions.   There is no showing by offer of proof or otherwise as to what the answers to these questions would be.   Such exceptions are without merit (*Yim Fat* v. *Gleason, ante* p. 210).

There is no merit in the exception that the court refused to admit evidence tending to show that the business reputation of Stoneham & Co. in New York is bad or that they run a bucket shop and are considered unreliable.   The evidence shows that this firm by direction of defendant sold the Wilbert mining stock and realized money therefrom and credited the realization, as directed by defendant, and whether honest or dishonest, reliable or unreliable, their commercial standing in no way affects the guilt or innocence of the defendant.

Objections by counsel for defendant were properly overruled to questions asked the defendant on cross-examination eliciting from him statements tending to show the following facts:   That he burned his books before leaving Honolulu for Japan; that he was speculating in stocks on margin through Stoneham & Co. in 1916; that he closed out the Archer, McInerny and Bierbach accounts to protect other accounts, and the realization from the Bierbach account was $532.38.

There is no merit in the exception to the court's overruling defendant's objection to a question asked defendant on cross-examination touching the amount of realization from the sale of the accounts, other than that of Bierbach, which Stoneham & Co. were carrying on credit of defendant, especially as defendant did not state the amounts, saying he did not remember. Where a defendant takes the witness stand in his own behalf he may, on cross-examination, be asked about any matter pertinent to the issues although he has not testified on direct examination as to all of the things about which he is asked. In some jurisdictions statutes are in force which confine the cross-examination of a defendant in a criminal case to matters about which he has testified on direct examination, but we have no such statute and it is a matter within the discretion and control of the trial court which should see that the defendant is treated fairly. This discretion does not appear to have been abused in this case.

The contention of defendant that if the crime charged is proven by the evidence, that it was committed in New York, and not in the Territory of Hawaii, cannot be sustained. Defendant was operating in Honolulu and from Honolulu cabled the order to sell the stock owned by Bierbach. The crime was commenced in Honolulu and consummated in New York, and the trial court had jurisdiction to indict, try and punish defendant for the crime charged.

We have carefully considered the exceptions of defendant to certain instructions given, although we are unable to ascertain from the record whether the entire charge of the court to the jury is before us or not, and find no reversible error therein. The court properly gave the statutory definition of embezzlement. The instructions given, which are in the record, left to the jury the determination of the facts and contained the usual safeguards of defend-

ant's rights.   Under those instructions the jury had to
find every material fact necessary to show defendant's
guilt and we find nothing in the instructions prejudicial to
the defendant.   The jury were told that they must find that
the defendant had control of the 20,000 shares of Wilbert
mining stock by consent and authority of the owner, Mr.
Bierbach, and that he converted the same to his own use
and benefit without the consent of such owner.   There was
evidence showing that defendant was held responsible for
all accounts handled by him, including the Allen account,
and that he was handling the Allen account of his own
volition, and there is no evidence showing that when he
closed out with Stoneham & Co. in 1916 that he did not
close out the Allen account also; and there is no evidence
that Allen was benefited by receiving any part of the reali-
zation on the Wilbert stock which the defendant is charged
with having embezzled.   The Bierbach account as shown by
the evidence in this case consisted alone of the Wilbert
mining stock transaction, and the cabled instruction of the
defendant to sell the account was an instruction to sell the
stock.   The defendant contends that upon no hypothesis
other than the presumption that defendant realized on
the Allen account can some of the instructions be sustained.
We do not think so as under the evidence it is not a mere
presumption but a proven fact that defendant was controll-
ing the Allen account and liable therefor to Stoneham &
Co.   The proven circumstances, some of which are adverted
to herein, we think authorized the jury to find that the de-
fendant converted the Wilbert mining stock owned by
Bierbach to his own use and benefit.   The verdict was au-
thorized and the motion for a new trial was properly
denied.

The exceptions are overruled.

*C. S. Davis,* Second Deputy City and County Attorney,
for the Territory.

*W. B. Lymer* for defendant.