# STATE OF HAWAII *v.* FRANCIS NOBORU YOSHIDA.

## No. 4132.

JULY 29, 1960.

TSUKIYAMA, C. J., MARUMOTO, CASSIDY, WIRTZ
AND LEWIS, JJ.

OPINION OF THE COURT BY CASSIDY, J.

This is an appeal from a conviction of the defendant
on a charge of procuring and pimping in violation of
R.L.H. 1955, section 309-28. The defendant was found
guilty by a jury under an indictment alleging that he "did
induce, compel and procure Purline Robinson, a female
person, to practice prostitution, with the intent thereby to
obtain and secure from said female person a portion of
the gains earned by her in such practice."

We have heretofore held that the only ruling properly reserved for consideration on this appeal pertains to the admission of a written confession. Ante page 81.

Evidence was adduced by the prosecution showing that on August 29, 1958, the defendant gave the police a statement, in question and answer form, which was reduced to writing and signed by him. In it, the defendant related that he had met Purline Robinson about five months before, that he became intimate with her and that they entered into an agreement calling for her to practice prostitution with the proceeds therefrom to be split between them. As he explained: "She needed money, I needed money. So we came to an agreement. * * * I find a man that would want to go with her—for intercourse. * * * I would make the contacts and we would split fifty-fifty." The defendant further admitted that on three or four occasions, the dates of which he could not recall, he had taken Purline Robinson to a place in the vicinity of the Waialae Drive-In Theatre in Honolulu and that on each of the occasions he had driven her elsewhere to have sexual intercourse with men he had made arrangements with for that purpose. He stated that the rate charged for each act was $10 or $12 and that "I collected the money —sometimes she did." He said that in the one week involved there were about fifteen acts and that he received $75 and she the rest. The defendant also stated that a Norman Texeira acted on his behalf three or four times in making arrangements with a "customer" for Purline Robinson. He was asked if he knew what money arrangements Texeira had with Purline Robinson for lining up these customers, and he replied, "He was doing it as a favor to me."

The defendant objected to the admission of the written statement on two specific grounds; viz, (1) "The corpus delicti in this case has not been proven," and (2) "The

statement was not voluntarily made." The objections will be taken up in the order stated.

The independent proof of the corpus delicti rested almost wholly on the testimony of Purline Robinson. As far as bearing on the issue to be first considered, it is summarized hereunder.

She was nineteen years old. She came to Honolulu in January, 1958, with the hope of making arrangements with her husband, who was living here, for a divorce. She lived with her husband for a month. They then parted and went their separate ways. She met the defendant some time in February and soon became intimate with him. In the middle of March he asked her if she wanted "to work for him" and make some "fast money." He explained he meant for her to work as a prostitute. She refused the proposal and broke off relations with him. Later they made up, and near the end of June he again asked her to go to work for him. She agreed to do so when he threatened to write her parents on the mainland that she was working as a prostitute here. The defendant told her he would let her know when she was to begin work. On the evening of July 7, 1958, the defendant and one Norman Texeira called on and then drove her, in defendant's automobile, to Texeira's home back of the Waialae Drive-In Theatre, where a group of men were gambling in the basement. She was told by the defendant and Texeira that these men were the men she was to go with and that she was "to play up" to them. Shortly after her arrival Texeira called her out of the house and after a conversation with him (which on objection she was not permitted to relate) she went to the defendant's car where he was waiting with one of the men who had been at the gambling game. The defendant drove her and this individual to another location, sometimes referred to in her testimony as "the camp." She entered a room and had

intercourse with the man while the defendant waited in the car. Defendant later drove her back to the game and on six or seven other occasions during the course of the evening took her with one of the gamblers to the camp for the same purpose involved on the first trip. The men solicited were all strangers to her. The defendant also called for and took her to Texeira's place on the nights of July 8 and July 15. On each of those nights, with either Texeira or the defendant transporting her and a "customer" to the place of assignation, there was a repetition of the routine that occurred on the night of July 7. She did not receive money from any of the men she had intercourse with. She was not given any money by the defendant or any one else and she had no direct knowledge that the defendant received any money from or on account of her activities.

Purline Robinson identified an individual brought into the courtroom while she was on the witness stand as one of the men who had been transported with her from the gambling game to the camp by the defendant. She knew him only by the name of Daniel. Daniel was called by the prosecution. He was the only other witness contributing any independent evidence in proof of the charge. He denied that he had been at the place where the gambling occurred, but testified that on an evening in the summer of 1958, the defendant and Norman Texeira accompanied by Purline Robinson drove up to the place where he lived, that the two men approached him and, with Texeira as spokesman, asked him if he "wanted a woman." He said he asked them, "How much?" and that, on being told the charge was $10, he accepted the proposal. He said he was told to get the money, that he did so and thereupon he and the woman went into a room and had sexual intercourse. He testified he paid Purline Robinson $10 and that she and the two men left in the automobile they had come in.

The two elements constituting the corpus delicti here involved are: (1) The inducement of a female to practice prostitution, and (2) The accompanying intent to participate in the earnings from such practice.

The prosecution's evidence aliunde the confession directly established that the defendant prevailed upon or induced Purline Robinson to practice prostitution and no question has been raised respecting the sufficiency of the independent proof on this element of the offense. It is appellant's contention however that, independent of his confession, "there was not a scintilla of evidence from which it could be properly inferred that defendant ever intended to obtain and secure from her a portion of her earnings as a prostitute" and that, therefore, "since the *corpus delicti* was never established, the admissions and confessions of the defendant were improperly used to procure his conviction."

Appellant's contention calls first for consideration of the proposal underlying it to the effect that a confession of an accused may not be used in any respect to obtain or support a conviction unless each of the essential elements of the corpus delicti is established by independent proof. A similar contention was made in *Republic* v. *Tokuji,* 9 Haw. 548. The court by-passed ruling on the point but made the discerning comment that it "does not appear to have been invariably held in other courts, that the principle of law contended for is correct." That decision was rendered in 1894. Since then there have been two cases in this jurisdiction, *Territory* v. *Sumngat,* 38 Haw. 609 and *Territory* v. *Hart,* 24 Haw. 349, involving the general subject under consideration, but in neither was the precise issue here presented squarely raised or passed on by the court. In the same period a great number of decisions have been rendered on the subject in other jurisdictions. See 127 A.L.R. 1130 and 45 A.L.R. 2d 1316.

There is no uniformity in the holdings. At one extreme, Massachusetts permits a conviction to rest on a naked confession. (*Commonwealth* v. *Kimball*, 321 Mass. 290, 73 N.E. 2d 468.) In Pennsylvania, at the other extreme, a confession may not be taken into consideration unless the corpus delicti is proved beyond a reasonable doubt by independent evidence. (*Commonwealth* v. *Puglise*, 276 Pa. 235, 120 Atl. 401.) From the welter of available cases with holdings ranging the full course between these extremes it is practically impossible to say with any degree of assurance that any particular formula has the support of a majority, or, for that matter, of any given number of jurisdictions. As stated in *Opper* v. *United States*, 348 U. S. 84 at 93: "Whether the difference in quantum and type of independent proof are in principle or of expression is difficult to determine. Each case has its own facts admitted and its own corroborative evidence, which leads to patent individualization of the opinions." However, we find sound the reasoning of and align with the authorities which support the rule that does not require full proof of the corpus delicti to be established independently of the confession before it may be resorted to and that permits a confession to be relied on to meet and remedy a deficiency otherwise existing in the proof of the corpus delicti if the trustworthiness of the confession appears to be assured by circumstances shown by the independent evidence.

Whatever the difference in the quantum and the quality of proof required under the particular rules adopted in the various jurisdictions, the basic purpose of each in requiring corroboration of the confession by independent evidence before it may be admitted or used is to meet the possibility that the confession may have been falsely given through misunderstanding, confusion, psychopathic aberration or other mistake. *Smith* v. *United States*, 348 U. S.

147, 153; 127 A.L.R. 1132; and 20 Am. Jur., *Evidence*, section 1233 p. 1085 at p. 1086. We are disposed to believe that the protection of the accused can be as well assured by the proper application of the flexible rule, above stated, as by the rigid rule which requires independent proof of all elements of the corpus delicti before the confession may be resorted to. With the additional safeguard requiring the voluntariness of a confession to be shown, preliminarily to the satisfaction of the court and ultimately to the satisfaction of the jury, before it may be considered, and the protection afforded by the fundamental requirement that the guilt of the accused be proven beyond all reasonable doubt, it appears to us that the possibility of misuse of a defendant's confession under the rule we favor is too remote to justify the additional restrictions of a more rigid rule. In reaching this conclusion, we indulge, as should be permissible, in the presumption that the presiding judge and the jury will adequately respond to the limitations and requirements imposed on them, respectively, for the protection of the accused by these principles of law.

A version of the view that full proof independent of the corpus delicti is not required is given in *Wynkoop* v. *United States*, 22 F. 2d 799 (9th Cir.) as follows: "While the decided cases are not in complete harmony, the rule is well settled in this circuit that it is unnecessary to make full proof of the corpus delicti independently of extrajudicial confessions. United States v. Boese (D. C.) 46 F. 917; Mangum v. United States (C. C. A.) 289 F. 213; Pearlman v. United States (C. C. A.) 10 F. (2d) 460. In this last case the court said: 'We find the general rule to be as stated by Judge Learned Hand, in the Circuit Court of Appeals in the Second Circuit, in Daeche v. United States, 250 F. 566, 571, 162 C. C. A. 582, 587: "Any corroborating circumstances will serve which in the

judge's opinion go to fortify the truth of the confession. Independently they need not establish the truth of the corpus delicti at all, neither beyond a reasonable doubt nor by a preponderance of proof." ' * * *." See also *Braswell* v. *United States,* 224 F. 2d 706 (10th Cir.) ; *State* v. *Geltzeiler,* 101 N.J.L. 415, 128 Atl. 240; *State* v. *Saltzman,* 241 Iowa 1373, 44 N.W. 2d 24; *Martinez* v. *People,* 129 Colo. 94, 267 P. 2d 654; *Brower* v. *State,* 217 Miss. 425, 64 So. 2d 576; *State* v. *Cardwell,* 90 Kan. 606, 135 Pac. 597.

Recently, in *Opper* v. *United States, supra,* the United States Supreme Court confirmed the rule so laid down by the Ninth Circuit in the *Wynkoop* case, stating (at page 93) : "* * * However, we think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti.* It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense. *Smith* v. *United States, post,* p. 147. It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt."

On the same day the *Opper* decision was rendered the court handed down its decision in *Smith* v. *United States,* 348 U. S. 147, which covered somewhat the same issue as was involved in the *Opper* case. The *Opper* case is not referred to in the *Smith* decision, but we read the latter decision as also confirming the holding of *Wynkoop* v. *United States,* to the effect that it is not an absolute requirement that the corpus delicti be fully proven inde-

pendently of a confession. In the *Smith* case, after citing *Wynkoop* v. *United States,* among other cases, the court posed and answered in the affirmative the question "whether it is sufficient if the corroboration merely fortifies the truth of the confession, without independently establishing the crime charged," and continued to state: "All elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused." (p. 156.)

Consistently with the foregoing, it is represented in 20 Am. Jur., *Evidence,* section 1233 pp. 1085-6, that: "The general rule now is that while the corpus delicti cannot be established by the extrajudicial confession of the defendant unsupported by any other evidence, it may be established by such a confession corroborated by other facts and circumstances. It is not necessary to prove the corpus delicti by evidence entirely independent and exclusive of the confession, but sufficient proof to convict exists when the corpus delicti is established by other evidence and the confession taken together. * * *."

The quoted text appears to be a satisfactory general statement of the principle applicable on this appeal. Refinements may be required under the particular facts of other cases but the general rule as so stated appears sufficient to indicate our rejection of appellant's proposal that the corpus delicti must be fully established by evidence independent of the confession and, with the other authorities we have referred to, to govern the disposition of the point under consideration upon the record in the present case.

There is nothing in the independent evidence in this case which proves defendant's intent as positively and directly as the admission in his confession to the effect

that his agreement with Purline Robinson contemplated that she would split the earnings with him on a fifty-fifty basis. However, there are circumstances proven by the independent evidence which relate to and, by inference, tend to prove the element of intent.

Independently of the confession, the record in this case hardly warrants any conclusion but that the venture entered into by defendant and Purline Robinson was a commercial one and that each of the men solicited paid for his engagement with her. She testified she received no part of the proceeds from her activities during the one week involved. These circumstances afforded one basis for inferring that the defendant, as the manager and active solicitor in the joint venture, quite likely received and retained proceeds from her activity—from which can be inferred his intent to do so. The very nature of the calling, and the extent to which the independent evidence shows the defendant pursued it, tend to preclude the conclusion that he might have undertaken his part in the venture without intent of monetary gain.

Aside from the proof of defendant's intent to participate in earnings which may be derived from considering his actual activities, the terms of the agreement, as related by Purline Robinson, also furnish some basis for inferring the existence of such an intent.

It was not necessary under the charge against the defendant to prove that he actually received any of Purline Robinson's earnings as a prostitute. All that was required in that respect was to show that at the time he induced her to engage in prostitution he did so with the intent of participating in her earnings. *Territory* v. *Palai*, 23 Haw. 133. Her testimony was that the defendant proposed that she "work for him" as a prostitute and that on June 30, 1958, they came to agreement on his proposal. We think that the plain words accredited to the defendant carried

a fairly strong implication that in the proposed relationship between himself and the witness, he, in the dominant role, was to participate in whatever she, as the servient party, was able to earn in the venture. Put bluntly, with the circumstances otherwise shown by the independent proof there does not appear to be much likelihood that the language used by the defendant in making his proposal to Purline Robinson could have been intended by him to mean anything other than that he was proposing to act in the capacity of a pimp for her with the functions and returns ordinarily understood to be incident to that calling.

Applying the law to the record in this case, it is clear that, even if, as contended, the evidence just reviewed were deemed insufficient to independently establish the defendant's intent to obtain a portion of Purline Robinson's earnings as a prostitute, it nevertheless tended, to a marked degree, to prove such intent. It fully fortified the truth of the defendant's admission in that respect. The reception in evidence and the consideration of the confession were therefore warranted. The corpus delicti was thus properly and adequately established by such other evidence and the confession taken together.

There remains for consideration appellant's further contention that the confession was inadmissible because it was not voluntarily made.

The defendant was interviewed on three separate occasions while under detention by the police. He was arrested at about nine o'clock on the evening of August 28 and shortly thereafter was questioned by Lieut. George Akana, on which occasion he gave the officer an oral confession. On the afternoon of August 29, Lieutenant Akana again questioned the defendant and obtained from him the written confession under consideration. Earlier on the same day the defendant had been interviewed in the office of Asst. Chief of Police Leon Straus. The evidence in-

dicates that this interview was not for the purpose of developing proof of the charge the defendant was being investigated for, but rather for the purpose of ascertaining whether he had any knowledge of a suspected tie-up between Texeira and a sergeant of the police vice squad then under surveillance. Lieutenant Akana was not present at this interview. Another detective, Itsuku Murakami, was.

Lieutenant Akana was the first witness called to prove the confessions. After testifying on the general circumstances attending his first questioning of the defendant, and that he had made no promises or inducements to the defendant nor otherwise asserted any coercion or duress against him, the witness was about to relate the results of his first interview with the defendant when defendant's counsel moved that the jury be excused and that a voir dire hearing be had in its absence on the question of voluntariness. The motion was granted.

The defendant took the stand and, in support of his claim that his statements to the police were involuntarily made, testified that Detective Murakami told him that he was a friend of the defendant's family, that the best thing for him to do was to cooperate with the police, and that if he did so his involvement with the law could be kept out of the newspapers and he would be entitled to probation. He testified that Murakami's inducements were made during the interview in Assistant Chief Straus's office, and that Straus also indicated to him that if he cooperated with the police the matter would be kept out of the papers and he would get probation. The defendant said it was by reason of these inducements that he made the statements to the police. The defendant made no claim that Lieutenant Akana had made any promises to him or had used coercion or improper influence in obtaining either the oral or the written statement from him. He made no attempt whatsoever to refute Lieutenant Akana's testi-

mony to the effect that the statements were voluntarily given.

Called as a witness, Detective Murakami admitted that in the interview in the assistant chief's office there had been some discussion relative to probation and about keeping the matter out of the newspapers, but he said that these were matters which the defendant was concerned about and were first mentioned by the defendant. The witness further testified that although they requested the defendant's cooperation on the departmental investigation involving the vice squad sergeant, not only did he or Assistant Chief Straus make no promises to the defendant, they, in fact, advised him that they could give no assurance that he would get probation and that they had no control whatsoever over what the newspapers might publish.

After completion of the voir dire hearing, the court overruled the objections to reception of the oral interview of the defendant by Lieutenant Akana. The jury was recalled and the witness was permitted to relate the oral confession of the defendant. It corresponded with the written confession in all essential respects.

Lieutenant Akana identified the written confession and, after further direct and cross examination of the witness on the circumstances attending the taking of it, the confession was offered and admitted in evidence over the objections above stated. The defendant did not take the stand after the jury was recalled. Testimony of Lieutenant Akana on the voluntariness of the defendant's statement to him thus remained unrefuted.

The conflict between the voir dire testimony of the defendant and that of Detective Murakami presented a factual issue for the ruling of the court. In admitting the confession, the court resolved the issue against the defendant. Its finding in that respect must be taken as con-

clusive on the admissibility of the confession if supported by more than a mere scintilla of evidence. Under the standard applicable there was ample evidence to justify the court's ruling, particularly when it is noted that the matters of inducement complained of by the defendant occurred after he had made the oral confession, the proven voluntary nature of which, as has been indicated, he made no attempt to attack on his voir dire examination. On this record no error can be predicated on the admission of the written confession over the objection that it was not voluntarily made. *State* v. *Ponteras,* 44 Haw. 71 and cases therein cited at page 81.

The judgment is affirmed.

*O. P. Soares* for plaintiff in error.

*John H. Peters,* Prosecuting Attorney, City and County of Honolulu, and *Frederick J. Titcomb* and *Mack H. Hamada,* Deputy Prosecuting Attorneys, for the State, defendant in error.