[No. 27621.   Department One.   December 1, 1939.]

THE STATE OF WASHINGTON, *Respondent*, v.
HARRY MARKUS STUHR, *Appellant*.[1]

[1]Reported in 96 P. (2d) 479.

522

*Will G. Beardslee* and *George F. Ward,* for appellant.

*B. Gray Warner* and *Leo W. Stewart,* for respondent.

Robinson, J.—Chapter 74, Laws of 1937, p. 321, effective June, 1937, amended Rem. Rev. Stat., § 2442, to read as follows:

"(1) Every person who shall take any indecent liberties with, or on the person of any female of chaste character, without her consent, shall be guilty of a gross misdemeanor;

"(2) Every person who shall take any indecent liberties with or on the person of any female under the age of fifteen years, or make any indecent, or obscene exposure of his person, or of the person of another, whether with or without his or her consent, shall be guilty of a felony, and shall be punished by imprisonment in the state penitentiary for not more than twenty years, or by imprisonment in the county jail for not more than one year." Rem. Rev. Stat. (Sup.), § 2442 [P. C. § 9114].

In March, 1939, the state filed an information against the appellant, charging as follows:

"He, said Harry Markus Stuhr, in the County of King, State of Washington, on or about the 18th day of December, 1937, wilfully, unlawfully and feloniously

then and there did take indecent liberties with and on the person of one Jane Doe, then and there a female child under the age of fifteen years, and not then and there the wife of the said Harry Markus Stuhr."

The following is, in substance, the evidence produced by the state at the trial: Roy Mahoney, a member of the detective division of the Seattle police department, testified that, while going to lunch on that day, he noticed the defendant and a little girl, and that defendant's actions seemed suspicious; that he followed them and saw them go into an alley; that he went around to the other end of the alley, and they were not in sight. On one side of the alley, there was a row of garages, of which all but one were padlocked. He opened the door and saw the defendant and the girl in a dark corner. The evidence as to what was taking place is so revolting that we shall not set it out in this opinion. It will be sufficient to say that, if true, it described the commission of an independent and unnatural crime. Officer Mahoney grappled with defendant, but he broke away, the officer in pursuit. During the chase, the officer fired three times, hitting the defendant on each occasion, the third shot bringing him down. The little girl, whom the officer described as being seven or eight years old, with blond hair and wearing a red coat and a blue dress, fled and was never found or identified. The defendant was so severely wounded that it seems extraordinary that he survived.

Officer Roy Davis testified that, two days later, on December 20th, defendant denied that he had done the specific act attributed to him by Officer Mahoney, but admitted another, describing it, which would, undoubtedly, constitute the taking of an indecent liberty with, and upon, the body of the child. Captain Miller, of the Seattle Police, was present at that interview

and fully corroborated the testimony of Davis. Dr. Rickles, a hospital physician, testified that the defendant made the same statements to him sometime between the 22nd and 27th of December. Later, after being released from jail, the defendant told Dr. Rickles that the impulse to do such things came upon him from time to time.

Robert Riley heard the shots and saw the defendant running, with Officer Mahoney in pursuit. Esther Linden heard a shot and saw a man, with a revolver in his hand, running north up the alley. The defendant had passed beyond her vision. She saw the little girl running in the opposite direction. "She was about ten to twelve years of age and had on a red coat and was blond."

Albert Wyse, a resident of the neighborhood, heard the shooting and saw the little girl running down the alley. He said she was blond, wore a red coat, and seemed ten to eleven years of age.

There were one or two other witnesses called, but the above is the substance of the state's case. When the state rested, the defendant moved to dismiss, on the ground that the state had failed to prove the crime alleged in the information. The motion was denied. The defendant then made his opening statement to the jury in person. In so doing, he, of course, did not subject himself to cross-examination. We do not know what advantage, if any, he took of this opportunity, since his statement is not in the record. He did not take the witness stand, nor was evidence offered on his behalf other than a hospital chart; this, presumably, to show that, while in the hospital, his condition was so serious that he ought not to be held accountable for what he said to the police officers and the attending physician.

The appellant contends that his demurrer to the in-

formation should have been sustained. It is urged that the information was too indefinite and did not sufficiently inform him as to the crime charged.

The general rule is set out in *State v. Randall,* 107 Wash. 695, 182 Pac. 575, to the effect that it is sufficient, in charging a crime, to follow the language of the statute. To that rule, we have recognized exceptions in the case of general statutes, such as those covering conspiracy, *State v. Scollard,* 126 Wash. 335, 218 Pac. 224, 32 A. L. R. 1082; forgery, *State v. Kuluris,* 132 Wash. 149, 231 Pac. 782; and extortion, *State v. Pettett,* 141 Wash. 668, 252 Pac. 104.

The question here presented is: Are the words "indecent liberties," as used in Rem. Rev. Stat. (Sup.), § 2442, so indefinite in meaning that an information must go beyond the statute and plead the specific act or acts relied on? In so far as we are advised, the question is one of first impression in this state, but there are persuasive decisions in a number of other jurisdictions. One of the leading cases is *State v. Kunz,* 90 Minn. 526, 97 N. W. 131. In this opinion, it is said:

". . . for the term 'indecent liberties,' when used with reference to a woman, old or young, is self-defining; and it would be as unnecessary and as indecent to allege the defendant's particular acts as it would be, if he were charged with rape, or carnally knowing or abusing a female child under the age of consent, to set forth the evidence in the indictment."

The supreme court of Utah quoted the above excerpt from the opinion of *State v. Kunz* in *State v. MacMillan,* 46 Utah 19, 145 Pac. 833, and added:

"We thoroughly agree with the Supreme Court of Minnesota that the term 'indecent liberties,' as used in the statute, is clearly self-defining. What more could be said, except to state the evidence which proves or establishes the offense? We think that every per-

son of the most ordinary intelligence and understanding, who is familiar with merely the rudiments of the English language, understands what is meant when he, or any one else, is charged with having taken indecent liberties with the person of a child. To say more is merely to explain what was done, which, like in a charge of carnal knowledge, or of assault with intent to have carnal knowledge, is not necessary. We think the information was sufficient."

This holding is reaffirmed in *State v. Therkelson,* 48 Utah 629, 161 Pac. 59. See, also, *People v. Hicks,* 98 Mich. 86, 56 N. W. 1102; *Dekelt v. People,* 44 Colo. 525, 99 Pac. 330. The state cites *State v. Farnham,* 119 Me. 541, 112 Atl. 258, also, but, as we read the opinion, it is somewhat favorable to appellant. We are of the opinion that the information was sufficient.

The appellant's assignment as to instruction No. 2 raises a closely related question. This instruction reads as follows:

"The term 'indecent liberties' is incapable of a precise legal definition. However, for the purpose of this case you are instructed that an indecent liberty is a privilege or license taken in violation of the laws of propriety, and is such an act or acts as the common sense of society would regard as indecent and improper, and offensive to modesty and delicacy."

Exception was taken upon the ground that the instruction did not limit the jury to any specific act and permitted each of its members to determine for himself what an indecent liberty is. It was said, in taking the exception, that the jury, or some member thereof, might believe that the mere act of walking up street with a strange girl was indecent, and, more to the point, during the oral argument, that the jury might think that the mere taking of the little girl into the garage constituted an indecent liberty. These last possibilities, however, were precluded by the next instruction, wherein the jury was told:

"To convict the defendant of the crime herein charged, the State must prove to you beyond a reasonable doubt, all of the following elements:

"(1) That on or about the 18th day of December, 1937, the defendant Harry Markus Stuhr did take indecent liberties *with and on* the person of one Jane Doe; . . ." (Italics ours.)

It would be as difficult to accurately define "indecent liberties" as to define "fraud" or "due process of law." We do not know that any court has made the attempt. As we have already shown, it is held in *State v. Kunz, supra,* that the term is self-defining. It is said in *People v. Hicks,* 98 Mich. 86, 56 N. W. 1102:

" 'Indecent and improper liberties with the person of such child' means such liberties as the common sense of society would regard as indecent and improper. In this case, as in *State v. Millard,* 18 Vt. 577, it may be said that 'no particular definition is given by the statute of what constitutes this crime. The indelicacy of the subject forbids it, and does not require of the court to state what particular conduct will constitute the offense. The common sense of the community, as well as the sense of decency, propriety, and morality which most people entertain, is sufficient to apply the statute to each particular case, and point out what particular conduct is rendered criminal by it.' The prosecution in that case was for indecent exposure of the person."

It is urged upon the court that the evidence was not sufficient to prove any crime. In this connection, it is said that, in so far as can be known, some of the members of the jury may have found the defendant guilty because they believed he did the act testified to by Mahoney, while others did not believe that, but found him guilty upon the strength of his admissions while in the hospital. Hence, it is contended that, if the evidence be insufficient as to either of these acts, the verdict should be set aside. As a next step in the argu-

ment, it is contended that the evidence is insufficient to prove either act. As to the first act, the appellant invokes the rule of *Fluhart v. Seattle Electric Co.,* 65 Wash. 291, 118 Pac. 51:

"Oral statements, although undisputed, must yield to undisputed physical facts and conditions with which they are irreconcilable."

Mahoney's testimony was undisputed. It is urged that physical facts and conditions were shown with which it is irreconcilable. We will be unable to demonstrate why we think such physical facts were not shown without relating the disgusting details. The appellant and his counsel must be content with the statement that we do not think the photograph (defendant's exhibit 4) proves what they contend it does; and further, that it is not impossible that the defendant managed to rearrange his clothing before he encountered other witnesses. The physical facts and conditions tend to throw some doubt on Mahoney's story, but they are by no means irreconcilable with it.

In this connection, it is argued, vigorously and at some length, that Officer Mahoney's testimony is unworthy of belief, on the theory that he was under the necessity of magnifying appellant's offense in order to justify his having shot him three times. But that argument is two-edged. There are persons, fortunately, who, in spite of the treatment commonly accorded to police officers in criminal trials, continue to believe that police officers, as a rule, are as conscientious in the performance of their duties as other men are. Such persons might draw the inference that Mahoney must have seen the defendant committing a serious crime or he would not have shot him to prevent his escape. But all this is, of course, immaterial. Credibility is for the jury, not for the court.

As to the acts admitted by the appellant while in the hospital, it is said that his statements amounted to confessions, and confessions are not alone sufficient to establish the *corpus delicti*, citing *State v. Marselle*, 43 Wash. 273, 86 Pac. 586. But the admissions or confessions do not stand alone. Mahoney testified, in addition to the major act, that appellant had one hand on the child, although he could not determine whether it was under her dress or not, and other witnesses testified that they saw the appellant and the child fleeing from the scene.

It is also urged that, if, as is possible, some of the jury found the defendant guilty on the ground that he did the act testified to by Mahoney, and others, because he did the act which he admitted in the hospital, the verdict cannot be upheld. But a finding that he committed either act established his guilt of the crime charged. Suppose the two acts had been set up as the basis of separate counts, each charging the commission of the crime in a different way, and a jury had found the appellant guilty without specifying on which count they found the verdict, the verdict would have been good. *State v. Talbott*, 199 Wash. 431, 91 P. (2d) 1020.

Finally, it is assigned as error that the court gave the stock instruction as to direct and circumstantial evidence. It was excepted to on the ground that there was no circumstantial evidence in the case, and the giving of the instruction, it is urged, was unnecessary and confusing. But there was circumstantial evidence in the case, a great deal of it. For example, one of the arguments most pressed upon us on the appeal is that the physical facts, circumstances, and conditions shown completely nullified the direct evidence of Officer Mahoney. The instruction was ap-

propriate and favorable, rather than harmful, to the appellant.

The judgment and sentence appealed from is affirmed.

BLAKE, C. J., MAIN, BEALS, and SIMPSON, JJ., concur.

