[No. 9295-6-II.   Division Three.   July 27, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. LONNIE EUGENE ACHESON, *Appellant.*

*Paul R. Bruce,* for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney,* and *Mark E. Beam, Deputy,* for respondent.

McINTURFF, C.J.*—Lonnie Eugene Acheson appeals a jury verdict convicting him of indecent liberties. He challenges several rulings made by the Superior Court, including rulings that the State had not breached its duty to preserve evidence, that Mr. Acheson's confession was knowing and voluntary, and that the State had established the corpus delicti of indecent liberties. We affirm.

Mr. Acheson lived with his girl friend and her two children. The oldest child is a girl, H.G. On March 13, 1985, Mr. Acheson and the mother took H.G., then 4 years old, to a pediatrician because she was complaining of discomfort in the vaginal area. The pediatrician examined her, observed her hymen was extended, and suspected sexual abuse. He

---

*This case was heard by a panel of Division Three judges sitting in Division Two.

took a specimen from the child's vaginal cavity and sent it to the lab in his office. There, a technician prepared a slide, looked at it under a microscope and observed a single sperm cell. Due to the manner in which the slide had been prepared, the sperm cell could not be preserved. The doctor's office also sent a swab from the specimen to a lab in Portland to measure for acid phosphatase, a substance present in semen. The results were positive, but the Portland lab lost the specimen.

The pediatrician contacted Child Protective Services and, as a result, the police went to H.G.'s home to investigate. In an interview, H.G. told of being touched in the vaginal area by a blond boy who lived at the home of another 4–year–old girl named J.B. Mr. Acheson told the police that H.G. had wandered away from home the day before they took her to the pediatrician, and they had found her at J.B.'s residence. The police contacted J.B.'s mother, who stated H.G. had been in her house only a short time, and was never out of her presence. J.B. told the police that she had gone to H.G.'s house earlier that day and had seen Mr. Acheson through the front window touching H.G. between the legs.

At approximately 2:30 p.m. on March 29, Mr. Acheson and his girl friend brought H.G. to the police station. He expressed frustration with the manner in which the police were conducting the investigation, and he stated he wanted to clear his name. While there, Mr. Acheson was advised of his constitutional rights, signed a waiver, and agreed to take a polygraph, which was set for 8 p.m. He left the station and returned at the appointed time.

Harry White conducted the polygraph examination. He testified that he advised Mr. Acheson of his rights and obtained a signed waiver from him. He then conducted the examination, which showed deception by Mr. Acheson. Following the examination, Mr. Acheson admitted that he had experienced sexual feelings while placing medication on H.G.'s vaginal area. A second polygraph was run, which also indicated deception. He then related a bathtub incident in

which he allowed H.G. to touch his penis, and he became aroused to the point of orgasm. Mr. White then called in Sergeant Donald Chaney, and Mr. Acheson repeated these admissions to him during a tape–recorded session. Sergeant Chaney readvised Mr. Acheson of his rights prior to obtaining the taped confession. All interviews concluded at 3:30 a.m. when Mr. Acheson was placed under arrest.

At trial, both H.G. and J.B. testified. H.G. denied that Mr. Acheson had ever touched her sexually. J.B., whom the court had found competent to testify following a hearing, repeated her earlier statement to the police concerning her observation of Mr. Acheson and H.G. through the window. The doctor's testimony and Mr. Acheson's statements also were admitted. The jury returned a guilty verdict.

First, did the court err when it denied Mr. Acheson's motion to (1) dismiss the charge, or (2) suppress the lost physical evidence?

In *State v. Wright*, 87 Wn.2d 783, 557 P.2d 1 (1976), the court extended the application of the State's duty to preserve material evidence to situations involving governmental loss or destruction of such evidence. "[T]he duty to preserve applies not only to the prosecution but to its agents acting under prosecutorial authority." *State v. Vaster*, 99 Wn.2d 44, 53, 659 P.2d 528 (1983). The State points out that the pediatrician took the laboratory specimens from H.G. *before* he contacted Child Protective Services, which initiated the police investigation. Mr. Acheson counters that the pediatrician acted as the prosecutor's agent by reason of his statutory duty to report suspected child abuse and because his past experience in such cases should have alerted him to the fact the specimen was material evidence.

■ The facts here are analogous to those in *State v. Huxoll*, 38 Wn. App. 360, 366, 685 P.2d 628, *review denied*, 102 Wn.2d 1021 (1984), a rape case, in which we held the evidence showed "the hospital, without prosecutorial authority, either used the entire sample [collected from the victim] in testing or lost it." Here, the samples were never

in the control or possession of the State, and Mr. Acheson made no showing that the State had an opportunity to direct preservation of the samples. Thus, the court properly denied Mr. Acheson's motions.[1]

Second, Mr. Acheson makes numerous assignments of error regarding the court's rulings relating to evidence of his confession. He argues that the police coerced the confession from him and that when he made the statements he was under a police–induced misapprehension the polygraphs themselves were admissible and, thus, required him to explain their results. He also contends the court erred when it allowed the State to place in evidence the tape recording of the confession, since Sergeant Chaney already had testified to Mr. Acheson's statements. Finally, he asserts the court should have granted his motion for mistrial following the prosecutor's improper references, during closing argument, to the tape as substantive evidence.

## A
### Voluntariness

Mr. Acheson relies on the fact his confession followed a 7½–hour police interrogation ending at 3:30 a.m., and on his testimony that the police threatened that his girl friend's children would be taken from her if he didn't cooperate. He also testified the situation was intimidating to him, particularly since 10 years earlier his neck was broken by a policeman during an arrest. On the other hand, the State produced evidence that Mr. Acheson signed waivers after being advised of his rights at least three different times; was free to leave the police station until approximately 1 a.m., when he admitted the bathtub incident; appeared alert and cooperative throughout the evening; told the police he had had 11 hours' sleep the night before; and was permitted to drink coffee and smoke during the interview. The officers who interviewed him denied making

---

[1]Under our holding, we need not address Mr. Acheson's contention that a reasonable possibility exists that the evidence in question was exculpatory.

any threats.[2] Based on this evidence, we uphold the Superior Court's finding that the State established that Mr. Acheson's waiver of his *Miranda* rights was a voluntary, knowing and intelligent relinquishment of a known right. *State v. Wheeler,* 108 Wn.2d 230, 238, 737 P.2d 1005 (1987).

## B
### MISTAKE

Mr. Acheson contends the giving of *Miranda* warnings immediately prior to the polygraph suggested the *results* of the examination, as well as his statements, were admissible in court. The form which Mr. Acheson signed read, *inter alia*: "Anything you say can be used against you in court."[3] We find nothing there to imply that the examiner's conclusions about his truthfulness are admissible as evidence.

## C
### REPETITION

We note "[t]he admission of evidence which is merely cumulative is not prejudicial error." *State v. Todd,* 78 Wn.2d 362, 372, 474 P.2d 542 (1970) (citing *State v. Swanson,* 73 Wn.2d 698, 440 P.2d 492 (1968)). In addition, the evidence of the tape and transcript was not merely cumulative. Mr. Acheson testified that his confession was coerced, and the prosecution successfully sought admission of the tape so the jury could judge for itself the tenor of the questioning and Mr. Acheson's attitude. The court properly admitted the evidence for impeachment purposes.

---

[2] In its brief and in oral argument, the State noted Mr. Acheson may have been told that an abused child could be taken into protective custody if the mother was unsuited as a parent. There is no record testimony that such a statement was made. In any event, the foregoing does not amount to a threat to remove H.G. from her home if Mr. Acheson did not cooperate with the police.

[3] Under *State v. Rupe,* 101 Wn.2d 664, 677, 683 P.2d 571 (1984), Mr. Acheson's statements made during the polygraph examination are admissible if made following a knowing and voluntary waiver of rights.

## D
## PROSECUTOR'S REMARKS

■ In his closing argument, the prosecutor referred to the tape in instances where he should have referred instead to Mr. White's and Sergeant Chaney's testimony of Mr. Acheson's confession. When defense counsel finally objected to these references, the court sustained the objection, and the prosecutor was more careful in his comments. The jury already had been instructed that it should consider the tape for impeachment purposes only. These facts do not indicate a substantial likelihood that the prosecutor's comments affected the jury's verdict. *State v. Manthie,* 39 Wn. App. 815, 820, 696 P.2d 33, *review denied,* 103 Wn.2d 1042 (1985). The court properly exercised its discretion when it refused Mr. Acheson's motion for a mistrial.

In summary, we reject Mr. Acheson's assignments of error relating to evidence of his confession.

Third, did the court err when it ruled the State had established the corpus delicti independent of Mr. Acheson's admissions?

Corpus delicti usually consists of two elements: (1) an injury or loss, *e.g.,* death or missing property, and (2) someone's criminal act as the cause thereof. *Bremerton v. Corbett,* 106 Wn.2d 569, 573, 723 P.2d 1135 (1986). Generally, proof of the identity of the person who committed the crime is not part of the corpus delicti, which only requires proof that a crime was committed by someone. *Bremerton,* at 574. The corpus delicti rule was established by the courts to protect a defendant from the possibility of an unjust conviction based upon a false confession alone. *Bremerton,* at 576.

In *Bremerton,* which involved several consolidated appeals where the crimes charged were driving while intoxicated, the court held at page 574 that proof of the corpus delicti in those particular instances required identification of a particular individual who was under the influence. The court reasoned:

Proof that a car ran off the road, caused an accident or stopped in a traveling lane does not establish that an element of the offense was committed. Likewise, proof that someone was intoxicated does not prove that that person drove or was in control of the car. Inherent in the offense is the requirement that the intoxicated person was the driver or was in control.

*Bremerton,* at 574.

Our research revealed only two Washington cases which have discussed the corpus delicti rule in the context of the crime of indecent liberties. *See State v. Stuhr,* 1 Wn.2d 521, 96 P.2d 479 (1939); *State v. Frey,* 43 Wn. App. 605, 718 P.2d 846 (1986). Both involved testimony directly linking the defendant to the act, and, thus, did not address the issue of whether proof of the corpus delicti requires proof of identity of the criminal actor.

■ We hold that proof of identity of the criminal agent is not necessary in establishing the corpus delicti in indecent liberties cases. Evidence that a child has been sexually abused is evidence of both an injury and a criminal agency. Once the corpus delicti is established, there of course must be proof that a given person is the perpetrator or no conviction can follow. But identity of the perpetrator is not a necessary element in proving the corpus delicti in indecent liberties cases.

Here, there was sufficient evidence of sexual abuse to establish the corpus delicti. In addition to the technician's testimony that she observed a sperm cell in the specimen taken from H.G., the doctor testified that during his examination of the child he noted an extended hymen and redness and irritation in the vaginal area to an extent not likely to result from self–stimulation. We find no error.

Mr. Acheson's remaining assignments of error are also without merit and may be answered summarily:

The record reflects that 4–year–old J.B. understood the obligation of a witness to speak the truth. *State v. Allen,* 70 Wn.2d 690, 692, 424 P.2d 1021 (1967). Thus, the court properly exercised its discretion when it found J.B. compe-

tent to testify.

The court correctly ruled under ER 613 that certain testimony concerning a witness' prior inconsistent statement could be considered for impeachment purposes only. ER 804(a), cited by Mr. Acheson, is inapplicable. That rule permits the court to admit evidence that would otherwise be hearsay if the declarant is unavailable. Unavailability was not an issue here.

No prejudicial error occurred as a result of the court's rulings (1) admitting the testimony of one of the investigating officers that he had "accounted for the activities of J.B.'s residence", and (2) excluding Mr. Acheson's explanation of his reaction to the news H.G. had been abused. Our holding is based on our evaluation of the record under the "overwhelming untainted evidence" test adopted by this state to judge prejudice in constitutional error cases. *State v. Guloy,* 104 Wn.2d 412, 426, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020 (1986).[4]

The court also properly admitted evidence that Mr. Acheson received sexual gratification from applying medicine to H.G.'s genitals and was observed touching H.G.'s genitals in the living room of their home. The evidence was within the scope of the amended information charging Mr. Acheson with indecent liberties with H.G. between March 10 and March 14, 1985, and he did not object to its admission. The fact that the prosecutor, at the close of trial, narrowed his case to the bathtub incident, does not retroactively make this evidence inadmissible under ER 404(b), which prohibits evidence of other uncharged acts.

Finally, we reject Mr. Acheson's challenge to jury instruction 8. His argument in this regard cites no authority and is unpersuasive on its face.

---

[4]We utilized the more stringent constitutional error standard because the first cited error arguably was of constitutional magnitude; *i.e.,* it may have involved hearsay and, thus, impinged on Mr. Acheson's Sixth Amendment right to confront witnesses.

The judgment of the Superior Court is affirmed.

MUNSON and THOMPSON, JJ., concur.

Reconsideration denied October 19, 1987.

Review denied by Supreme Court February 1, 1988.