926 P.2d 904 (1996)
130 Wash.2d 673
The STATE of Washington, Respondent,
v.
Eric Steven RAY, Petitioner.
No. 63617-6.
Supreme Court of Washington, En Banc.
Argued June 25, 1996.
Decided November 27, 1996.
Sinsheimer & Meltzer, Inc., P.S., Lois Meltzer, Seattle, for petitioner.
Sabrina K. Housand, Norm Maleng, King County Prosecutor, Ann Foerschler, Deputy, Seattle, for respondent.
DOLLIVER, Justice.
The trial court dismissed a molestation charge against Defendant when it found the State did not introduce sufficient evidence to establish the corpus delicti of the crime, independent of Defendant's confession. The Court of Appeals reversed the trial court and reinstated the charge. We find the corpus delicti was not established, so we reverse the Court of Appeals.
On August 25, 1992, at around 1:00 a.m., Defendant and his wife were asleep in their bedroom when their three-year-old daughter, L.R., came into the room and asked for a glass of water. The Defendant, who normally slept in the nude, got out of bed and left the room with L.R. to get her the water. Sometime thereafter, Defendant returned to the bedroom and awoke his wife. He was upset and crying. He had a discussion with his wife, who immediately became upset and ran to L.R.'s bedroom to check on the child. The wife found L.R. asleep in her bed. Defendant's wife returned to their bedroom, *905 and after further discussion, Defendant placed an emergency call to his sexual deviancy therapist.
Based on Defendant's statements to his wife and his therapist, the police were contacted and an investigation began. Approximately two weeks after the incident, police interviewed Defendant, who confessed the alleged crime to the investigating officers. Defendant's confession to the police was consistent with the admissions he had made to his wife and his therapist. L.R. was also interviewed as part of the investigation. Two months after the incident, Defendant was charged with first degree child molestation. The trial judge determined L.R. was incompetent to testify at trial. L.R. had made out-of-court statements to investigators during a poorly conducted interview, but those hearsay statements were inconclusive and unreliable, thus inadmissible. The only information regarding the alleged crime, other than that given in the previous paragraph, comes from Defendant's confessions.
In his confession to the police, Defendant said he gave L.R. a glass of water and took her back to her bedroom. After she crawled into bed, he took her hand and placed it on his penis. After a few seconds, his daughter pulled her hand away, saying something to the effect of "don't like to touch you." Clerk's Papers at 12. Defendant stopped and returned to his bedroom where he admitted the act to his wife.
Defendant stipulated to the facts in the police report and waived his right to trial, but he argued the State had failed to establish the corpus delicti independent of Defendant's confession and admissions. The trial judge initially found the State had established the corpus delicti, and Defendant was found guilty on March 22, 1993.
Defendant filed a motion for reconsideration on the corpus delicti finding. After hearing additional oral argument, the trial judge retracted the earlier decision and found an insufficient showing of the corpus delicti. Because the State failed to establish the corpus delicti of the crime independent of Defendant's confession, the trial court excluded the confession and found insufficient evidence to support the charge. The trial court dismissed the molestation charge against Defendant with prejudice. The State appealed the decision.
In an unpublished opinion, the Court of Appeals disagreed with the trial court and held the extremely slight facts supported a reasonable and logical deduction that touching for the purpose of sexual gratification occurred. The court ruled Defendant's confession could be considered, and it reinstated the molestation charge. State v. Ray, No. 33582-1-1 (Wn.App. Nov. 6, 1995). This court granted Defendant's petition for review. State v. Ray, 129 Wash.2d 1003, 914 P.2d 66 (1996).
Before considering whether the State established the corpus delicti of the alleged crime, we first address a separate issue raised by the State. Although the State defends the Court of Appeals' decision, the State urges this court to reject the traditional corpus delicti doctrine and adopt in its place the "trustworthiness" standard used by the federal courts. See, e.g., Opper v. United States, 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101 (1954). The State claims the "trustworthiness" standard is more workable.
If this court abandoned the corpus delicti rule, it would have to overrule nearly 100 years of well-settled case law. See State v. Marselle, 43 Wash. 273, 276, 86 P. 586 (1906). This court has infrequently discussed under what conditions it should disregard the doctrine of stare decisis and overturn an established rule of law. An eloquent opinion on the matter was given by Justice Hale in State ex rel. State Fin. Comm. v. Martin, 62 Wash.2d 645, 665-66, 384 P.2d 833 (1963):
Through stare decisis, the law has become a disciplined artperhaps even a sciencederiving balance, form and symmetry from this force which holds the components together. It makes for stability and permanence, and these, in turn, imply that a rule once declared is and shall be the law. Stare decisis likewise holds the courts of the land together, making them a system of justice, giving them unity and purpose, so that the decisions of the courts *906 of last resort are held to be binding on all others.
Without stare decisis, the law ceases to be a system; it becomes instead a formless mass of unrelated rules, policies, declarations and assertionsa kind of amorphous creed yielding to and wielded by them who administer it. Take away stare decisis, and what is left may have force, but it will not be law.
....
To be uniformly applied, and equally administered, the rules of law should be both just and adaptable to the society they govern. A bad law uniformly administered is equally unjust and uniformly bad. If a rule laid down by the courts proves in time to be a bad one, applying the bad rule evenly does not provide equal justice for all. It may be equal, but it will not be justice. And courts are instituted among men to do justice between them, and between men and their government. So, to do justice, courts have devised a means of getting rid of bad rules, yet, at the same time, preserving stare decisis. Rules of law, like governments, should not be changed for light or transient causes; but, when time and events prove the need for a change, changed they must be.
See generally Fred W. Catlett, The Development of the Doctrine of Stare Decisis and the Extent to Which It Should Be Applied, 21 Wash. L.Rev. 158 (1946). This court should reverse itself on an established rule of law only if the rule is shown to be incorrect or harmful. State v. Lucky, 128 Wash.2d 727, 735, 912 P.2d 483 (1996) (citing In re Stranger Creek, 77 Wash.2d 649, 653, 466 P.2d 508 (1970)).
The State claims that times have changed, such that the traditional corpus delicti rule is unworkable with most modern crimes. The State's arguments are unconvincing. First, the State has not shown how first degree child molestation differs from traditional sex crimes such as indecent liberties, see State v. Stuhr, 1 Wash.2d 521, 96 P.2d 479 (1939), so as to render the corpus delicti rule unworkable in this case.
Second, and more importantly, this Court has previously considered the arguments for adopting the "trustworthiness" standard, and it has consistently declined to abandon the corpus delicti rule. State v. Aten, 130 Wash.2d 640, 663, 927 P.2d 210 (Wash.1996); State v. Smith, 115 Wash.2d 775, 784, 801 P.2d 975 (1990); City of Bremerton v. Corbett, 106 Wash.2d 569, 578, 723 P.2d 1135 (1986). This court unanimously applied the corpus delicti doctrine without question in other recent cases. See State v. Vangerpen, 125 Wash.2d 782, 796, 888 P.2d 1177 (1995); State v. Riley, 121 Wash.2d 22, 32, 846 P.2d 1365 (1993).
We are bound to follow our previous rulings on the issue unless the State can show how those rulings are incorrect or harmful. The State has made no such showing, so we continue to apply the corpus delicti doctrine.
Under the corpus delicti rule, the court may not consider a defendant's confessions or admissions unless the State has established the corpus delicti through independent proof. Vangerpen, 125 Wash.2d at 796, 888 P.2d 1177. It is sufficient if the independent evidence prima facie establishes the corpus delicti. Vangerpen, 125 Wash.2d at 796, 888 P.2d 1177. When determining whether the corpus delicti was established, this court "assumes the truth of the State's evidence and all reasonable inferences from it in a light most favorable to the State." Aten, at 658, 927 P.2d 210 (footnote omitted).
First degree child molestation consists of a person having, or causing another person under the age of 18 to have,
sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.
RCW 9A.44.083(1). Sexual contact is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2).
To establish the corpus delicti of first degree child molestation, the State had to establish, independent of Defendant's confession, that touching of the sexual organs *907 occurred between Defendant and L.R. In other cases involving indecent liberty crimes, the criminal act has been established through numerous means. See, e.g., State v. Clevenger, 69 Wash.2d 136, 417 P.2d 626 (1966) (physical injuries to three year old established the corpus delicti); State v. Acheson, 48 Wash.App. 630, 740 P.2d 346 (1987) (same), review denied, 110 Wash.2d 1004 (1988). See also State v. Stuhr, 1 Wash.2d 521, 96 P.2d 479 (1939) (officer observed suspect in dark corner of garage performing unnatural act with a young girl); State v. Mathis, 73 Wash.App. 341, 869 P.2d 106 (defendant's testimony at trial, along with victim's statement that defendant had kissed her, put his hands down her underpants, and allowed her to sleep overnight at his house established the corpus delicti), review denied, 124 Wash.2d 1018, 881 P.2d 254 (1994); State v. Biles, 73 Wash.App. 281, 871 P.2d 159 (child testified that her father performed the alleged acts), review denied, 124 Wash.2d 1011, 879 P.2d 293 (1994); State v. Frey, 43 Wash. App. 605, 718 P.2d 846 (1986) (child demonstrated explicit sexual acts with unclothed, anatomically correct dolls consistent with her earlier statements attributing such acts to defendant).
When compared to these previous corpus delicti cases involving indecent liberty crimes, the facts in this case, independent of Defendant's confession, do not establish the corpus delicti of child molestation. The Court of Appeals summed up the independent evidence in this case:
At approximately one in the morning, three-year-old L.R. came to her parents' bedroom and asked for a glass of water. Ray, probably nude, accompanied his daughter back to her room. Ray later returned to his room upset and crying. Ray awakened his wife and talked to her. His wife became upset and rushed to check on L.R. After further discussion with his wife, Ray, who was still upset, placed an emergency call to his sexual deviancy counselor.
State v. Ray, XXXXX-X-X, slip op. at 4 (Wn.App. Nov. 6, 1995). These facts suggest that something out of the ordinary occurred, but it is a leap in logic to conclude that any kind of criminal conduct occurred, let alone the specific conduct of first degree child molestation. Defendant's emergency call to his sexual deviancy therapist is inconclusive; one's placing an emergency call to a therapist shows that the patient is disturbed by something, but the unrest could be caused by unfulfilled urges, nightmares, or a subjective sense of guilt. See State v. Aten, 79 Wash. App. 79, 90, 900 P.2d 579 (1995) ("[T]he corpus delicti doctrine is specifically designed to prevent convictions based solely on the defendant's sense of guilt ...."), review granted, 128 Wash.2d 1016, 911 P.2d 1342 (1996) (footnote omitted).
The sparse facts surrounding Ray's getting a glass of water for his daughter fail to rule out Ray's criminality or innocence. See Aten, at 660, 927 P.2d 210 ("[C]orpus delicti is not established when independent evidence supports reasonable and logical inferences of both criminal agency and noncriminal cause."). Even though Ray speculatively could have molested L.R., and even though he had the opportunity to do so, the mere opportunity to commit a criminal act, standing alone, provides no proof that the defendant committed the criminal act. State v. Pennewell, 23 Wash.App. 777, 782, 598 P.2d 748, review denied, 92 Wash.2d 1036 (1979). Without any evidence, direct or circumstantial, that Ray molested L.R., the State has failed to establish the corpus delicti, and Ray's confession was properly excluded by the trial court.
The Court of Appeals is reversed, and the trial court's order dismissing the charge is reinstated.
DURHAM, C.J., and SMITH, GUY, JOHNSON, MADSEN, ALEXANDER and SANDERS, JJ., concur.
TALMADGE, Justice (concurring).
I agree with the majority opinion insofar as it applies the existing rule of corpus delicti. Under Washington's stringent interpretation of the rule, corpus delicti was not established here and the defendant's confession is inadmissible.
*908 Under the ex post facto clause of the United States Constitution, U.S. CONST., art. I, § 9, we cannot abandon the rule of corpus delicti in favor of a new rule on corroboration of confessions in this case. In State v. Ward, 123 Wash.2d 488, 497, 869 P.2d 1062 (1994), we followed the United States Supreme Court approach from Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) in analyzing changes in the law for purposes of the ex post facto clause:
a law violates the ex post facto clause if it (1) punishes as a crime an act previously committed, which was innocent when done; (2) makes more burdensome the punishment for a crime, after its commission; or (3) deprives one charged with a crime of any defense available according to the law at the time the act was committed. Collins, 497 U.S. at 42-43, 52 [110 S.Ct. at 2719-20, 2724] (citing Beazell v. Ohio, 269 U.S. 167, 169-70, 46 S.Ct. 68 [68-69], 70 L.Ed. 216 (1925)). After Collins, the proper inquiry is not whether the law is a burden, or "disadvantageous" to the defendant, but whether it makes more burdensome the punishment for the crime.
See also State v. Hennings, 129 Wash.2d 512, 919 P.2d 580 (1996); In re Powell, 117 Wash.2d 175, 814 P.2d 635 (1991); State v. Handran, 113 Wash.2d 11, 775 P.2d 453 (1989). This framework applies not only to new legislative enactments, but also to changes in the common law. State v. Gore, 101 Wash.2d 481, 489, 681 P.2d 227, 39 A.L.R.4th 975 (1984). The abandonment of the corpus delicti rule would change the legal rules to permit less testimony to convict the offender than was required when the crime in this case was originally committed and hence is not constitutionally permissible. Tapia v. Superior Court, 53 Cal.3d 282, 807 P.2d 434, 279 Cal.Rptr. 592 (1991) (portions of initiative changing California's corroboration requirement retroactively violate rule against ex post facto legislation and will be effective only prospectively).
I write separately because I believe our corpus delicti rule should be prospectively abandoned. As the majority notes, the rule of corpus delicti is long-standing in Washington law. Majority op. at 905. But it is an anachronism that has outlived its usefulness. See E. CLEARY, McCORMICK ON EVIDENCE § 145, at 370 (3d ed.1984). Judicial fears about police interrogation methods leading to confessions resulted in the corpus delicti rule, a common law evidentiary rule intended to insure the reliability of confessions. It is a creature of the days before Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). As at least one commentator has noted, application of the corpus delicti rule to modern statutes, which tend to define offenses more precisely and in greater detail, may impose an unrealistic or at least unnecessary burden upon the prosecution. See CLEARY § 145, at 371 (3d ed.1984).
Furthermore, there are three commonly stated rationales for following the corpus delicti rule: (1) protecting defendants of limited capacity from their own "false confessions"; (2) avoiding coerced confessions; and (3) promoting better law enforcement through investigation rather than inquisition. Unfortunately, these purposes are poorly served by the rule.
The irrationality of applying the corpus delicti rule in the first instance has been criticized as follows:
[i]f the purpose of the rule is to prevent convictions based on the statements of the insane and others of limited capacity, why does the rule only apply to confessions? When a disturbed person falsely incriminates himself and later recants, the corpus delicti rule bars his confession absent independent proof of the crime; yet when he falsely incriminates another, nothing excludes the statement simply because it lacks corroboration ... There is no reason to believe that the insane, the slow, and the unsophisticated speak more reliably of others than they do of themselves.
See, Thomas A. Mullen, Comment, Rule Without Reason: Requiring Independent Proof of the Corpus Delicti as a Condition of Admitting an Extrajudicial Confession, 27 U.S.F. L. REV. 385, 403 (1993). See also Development in the Law-Confessions, 79 HARV. L. REV. 938, 1084 (1966), suggesting that confessions made by the mentally ill can probably be controlled just as effectively *909 through psychiatric examination of the criminal defendants as by means of the corpus delicti rule.
As regards the "avoidance of coerced confessions" rationale, in light of the procedural protections granted defendants in modern criminal practice, the corpus delicti rule is an unnecessary protection:
[o]ur legal regime requires that defendants be advised of their right to remain silent and their right to an attorney before custodial interrogation. The failure to so advise or to provide a requested attorney renders the results of such interrogation inadmissible. Thus, the suggestion that the corpus delicti rule meaningfully buttresses the right against coerced self-incrimination is anachronistic at best.
See Mullen, 27 U.S.F. L. REV. at 404-05.
Likewise, the "promoting better law enforcement" rationale has been eviscerated with the strict procedural protections mandated by Miranda:
It has been suggested that the corroboration requirement has outlived its usefulness, since modern confessions rules protect against the admission of coerced confessions, and constitutional guidelines insuring that each element be proved beyond a reasonable doubt have to a large extent eliminated the chance that an innocent person would be convicted based on a false confession.
See David M. Nissman & Ed Hagen, Law of Confessions § 12:4, at 12-5 (2d ed.1994), citing Comment, 20 U.C.L.A. L. REV. 1055 (1973); Development in the Law-Confessions, 79 HARV. L. REV. 938, 1084 (1966); Note, 46 FORDHAM L. REV. 1205, 1235 (1979); State v. Parker, 315 N.C. 222, 337 S.E.2d 487, 494 (1985); State v. Yoshida, 44 Haw. 352, 354 P.2d 986, 990 (1960). See also Mullen, 27 U.S.F. L. REV. at 405-06.
We too have acknowledged concerns about the propriety of the corpus delicti rule:
... [W]e are not unmindful of the criticism that the corpus delicti rule has drawn from courts and legal commentators. It has been suggested that the rule may have "outlived its usefulness" in light of the development of other safeguards that protect against unreliable confessions. Others have questioned the extent to which the corpus delicti rule continues to serve its original purposes. Although the vast majority of jurisdictions, including Washington, still adhere to the rule requiring independent evidence of the corpus delicti, the federal courts and a growing number of state courts have opted for a more flexible rule for corroborating confessions than the rigid rule requiring independent proof of all elements of the corpus delicti; under this rule, the corroborative evidence need only tend to establish the trustworthiness of the confession.
(Citations omitted.) City of Bremerton v. Corbett, 106 Wash.2d 569, 577-78, 723 P.2d 1135 (1986).
The rule of corpus delicti has been severely criticized by renowned legal commentators, numerous law review articles and case law. See also 7 JOHN HENRY WIGMORE, EVIDENCE § 2070, at 510 (Chadbourne rev.1978) (describing the corpus delicti rule as a "positive obstruction to the course of justice"). See also 1 J. STRONG, McCORMICK ON EVIDENCE § 145, at 559-64 (4th ed., 1992). It would seem that the vitality of the corpus delicti rule owes more to stare decisis than to any logic or social policy, as its continued invocation ignores changed circumstances.
The United States Supreme Court abandoned corpus delicti in favor of the "trustworthiness doctrine" 40 years ago. In Opper v. United States, 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101, 45 A.L.R.2d 1308 (1954), that Court held:
we think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the corpus delicti. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense. It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify *910 a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt.
Many state courts have also abandoned or modified their treatment of the corpus delicti rule in light of the federal trustworthiness doctrine. See, e.g., Jacinth v. State, 593 P.2d 263, 266 (Alaska 1979) (adopting trustworthiness doctrine); People v. Cuevas, 131 Cal. App.2d 393, 396, 280 P.2d 831 (1955) (applying trustworthiness doctrine); State v. Harris, 215 Conn. 189, 193, 575 A.2d 223 (1990) (adopting trustworthiness doctrine); Laumer v. United States, 409 A.2d 190, 197-98 (D.C.App.1979) (applying trustworthiness doctrine to third party confessions); Harrison v. United States, 281 A.2d 222, 225 (D.C.App.1971) (applying trustworthiness doctrine); Reynolds v. State, 168 Ga.App. 555, 309 S.E.2d 867, 868 (1983) (evidence sufficient to corroborate confession is entirely within province of jury and corroboration in any material particular satisfies requirements of the law); State v. Yoshida, 44 Haw. 352, 357, 354 P.2d 986, 990-91 (1960) (adopting trustworthiness doctrine); People v. Brechon, 72 Ill.App.3d 178, 181, 390 N.E.2d 626, 28 Ill.Dec. 459 (1979) (confession need only be corroborated by some independent evidence tending to inspire belief in the truth of the confession); Matter of Welfare of M.D.S., 345 N.W.2d 723, 725 (Minn.1984) (trustworthiness doctrine applied); State v. True, 210 Neb. 701, 704, 316 N.W.2d 623, 625 (1982) (voluntary confession supported by slight corroborating circumstances is sufficient for conviction); State v. Zysk, 123 N.H. 481, 487, 465 A.2d 480, 483 (1983) (citing trustworthiness doctrine); State v. Lucas, 30 N.J. 37, 56, 152 A.2d 50 (1959) (trustworthiness doctrine adopted); State v. Paris, 76 N.M. 291, 295, 414 P.2d 512, 514-15 (1966) (adopting trustworthiness doctrine); State v. Parker, 315 N.C. 222, 236, 337 S.E.2d 487 (1985) (adopting trustworthiness doctrine); Stout v. State, 693 P.2d 617, 622 (Okla.Crim.App.1984) (citing trustworthiness doctrine), cert. denied, 472 U.S. 1022, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985); State v. Ervin, 731 S.W.2d 70 (Tenn. Crim.App.1986) (citing trustworthiness doctrine); Larson v. State, 86 Wis.2d 187, 198, 271 N.W.2d 647 (1978) (a conviction may rest on a confession where any significant fact is corroborated); Holt v. State, 17 Wis.2d 468, 480, 117 N.W.2d 626, 633 (1962) (requiring only some corroboration of any significant fact establishing confidence in the confession), cert. denied, 374 U.S. 844, 83 S.Ct. 1900, 10 L.Ed.2d 1064 (1963), rehearing denied, 375 U.S. 873, 84 S.Ct. 36, 11 L.Ed.2d 104 (1963).
The rule of corpus delicti has become a serious impediment to the proper handling of certain kinds of cases, particularly those involving highly vulnerable or youthful victims of crime who cannot give voice to the fact of the crime against them. See State v. Aten, 130 Wash.2d 640, 927 P.2d 210 (Wash. 1996). In cases such as the one before us, infanticide or child abuse by suffocation, where independent evidence of the crime may be virtually unattainable, it is contrary to the interests of justice to permit the corpus delicti rule to prevent the trier of fact from considering a confession. See, Maria Lisa Crisera, Comment, Reevaluation of the California Corpus Delicti Rule: A Response to the Invitation of Proposition 8, 78 CAL. L. REV. 1571, 1583 (1990).
We should abandon the rule of corpus delicti and join the growing number of states that have adopted the trustworthiness doctrine for corroboration of confessions. A confession should be admissible if the state produces substantial independent evidence tending to establish the trustworthiness of the confession. See, e.g., Opper, 348 U.S. at 93, 75 S.Ct. at 164. See also, CLEARY § 145, at 371 (3d ed.1984) and 1 STRONG § 145, at 564 (4th ed.1992). The trier of fact should be allowed to evaluate the totality of the circumstances of the defendant's confession once its trustworthiness is established. The trier of fact is in the best position to determine whether a defendant confesses to a crime because the defendant committed the crime or for other reasons personal to that defendant. While we should be cognizant of principles of stare decisis,[1] our rule of corpus *911 delicti prevents finding the truth. Stare decisis should not stand in the way of enhancing the truthfinding purpose of criminal trials. Our strict adherence to the corpus delicti rule should be abandoned prospectively in favor of the trustworthiness doctrine for corroboration of confessions.
NOTES
[1] We have acknowledged that stare decisis must yield when established rules of law should change to meet the needs of changed circumstances and times.

Rules of law, like governments, should not be changed for light or transient causes; but, when time and events prove the need for a change, changed they must be.
If rights have vested under a faulty rule, or a constitution misinterpreted, or a statute misconstrued, or where, as here, subsequent events demonstrate a ruling to be in error, prospective overruling becomes a logical and integral part of stare decisis by enabling the courts to right a wrong without doing more injustice than is sought to be corrected. By means of this doctrine, courts of the most prudent and careful tradition can move boldly to right the very wrong they have been traditionally perpetuating under the old, rigidly-applied, single-minded view of the doctrine of stare decisis. The courts can act to do that which ought to be done, free from the fear that the law itself is being undone.
State ex. rel. Washington State Finance Comm. v. Martin, 62 Wash.2d 645, 666, 384 P.2d 833 (1963).