# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71712-0-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DAVID FRANCISCO RUIZ, | ) | |
| | ) | |
| Respondent. | ) | FILED: June 15, 2015 |
| | ) | |

APPELWICK, J. — The State appeals the dismissal of its indecent liberties charge against Ruiz for failure to establish the corpus delicti. The corpus delicti rule requires that the State provide evidence independent of the accused's confession that demonstrates that the charged crime occurred. The State provided sufficient evidence to make that showing. We reverse.

## FACTS

On February 10, 2012, R.B., David Ruiz, and a few others gathered at a mutual friend's home. The group drank beer and played video games. At 1:30 a.m., the guests dispersed. But, some of the guests stayed overnight after being invited to do so.

Ruiz went to sleep in one of the bedrooms. R.B. went to sleep on the couch in the living room. R.B. went to sleep alone and fully clothed, with both his belt and pants zipper fastened. When R.B. woke up, he found his pants partially down and his penis exposed through the slit in his boxers. Ruiz was sleeping on his lap with his head in close proximity to R.B.'s penis, Ruiz's hand was on R.B.'s inner thigh, and there was a stain on R.B.'s

pants, which he thought was semen. R.B.'s "penis felt weird like something happened." His penis felt as it previously had after receiving oral sex.

Ruiz later admitted touching R.B. sexually, which led to an investigation by the police. Several days afterward, the police questioned Ruiz. He denied engaging in oral sex with R.B. He did, however, admit to fondling R.B.'s penis with his hand and getting sexual gratification from doing so.

The police questioned the other guests that were present the night of the alleged incident. Two witnesses reported seeing Ruiz near R.B. during the night after everyone had gone to bed. Around 2 a.m., one overnight guest woke up and walked through the living room to get a glass of water from the kitchen. As he passed through the living room, he saw Ruiz "sleeping with his face on the couch and his knees on the floor." At about 2:30 a.m., a resident of the house woke up to get water. As she passed through the living room on the way to the kitchen, she observed that "[Ruiz] was on the couch and he was leaning [towards R.B.]." She reported that, "Nothing looked weird to me, but I didn't have my glasses on so I only saw their outlines since it was dark."

The State charged Ruiz with two counts of indecent liberties against R.B.[1] Ruiz moved to dismiss for failure to establish the corpus delicti. He argued that dismissal was appropriate, because there was insufficient evidence—independent of his confession—to support a prima facie finding that a crime had occurred.

---

[1] On March 1, 2013, the State charged Ruiz with one count of indecent liberties. On October 8, 2013, the State submitted its first amended information, charging Ruiz with a second count of indecent liberties. On December 13, 2013, the State submitted its second amended information, charging Ruiz with two counts of indecent liberties, alleging the same criminal conduct as the prior information.

2

In response, the State presented police reports, including a statement from R.B. detailing the alleged crime and surrounding circumstances. The trial court dismissed the State's charges of indecent liberties without prejudice for insufficient corpus delicti. The State filed the same charges again. Ruiz again moved to dismiss based on the State's failure to establish the corpus delicti. In response, the State offered the same evidence presented during the first action, but it added a supplemental statement from R.B.[2] The court considered R.B.'s additional statement. But, it ultimately dismissed the case pursuant to State v. Knapstad, 107 Wn.2d 346, 356-57, 729 P.2d 48 (1986), and CrR 8.3[3] due to insufficient evidence to establish the corpus delicti. The State appeals.

---

[2] In the first action, the State presented R.B.'s supplemental statement on the day of the scheduled hearing. Because the trial court found the State's delay in admitting the supplemental statement constituted inexcusable neglect, the court declined to consider the statement. In the second action, the court considered the additional statement, in which R.B. added, that upon waking up, his penis felt as it previously has after receiving oral sex.

[3] CrR 8.3 allows a court to dismiss a case prior to trial "due to insufficient evidence establishing a prima facie case of the crime charged." CrR 8.3(c)(3) provides,

> The court shall grant the motion if there are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt. In determining defendant's motion, the court shall view all evidence in the light most favorable to the prosecuting attorney and the court shall make all reasonable inferences in the light most favorable to the prosecuting attorney. The court may not weigh conflicting statements and base its decision on the statement it finds the most credible.

CrR 8.3 adopts the procedure set out in Knapstad, 107 Wn.2d at 356-57. See 4A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CrR 8.3, drafters' comment at 219 (7th ed. Supp. 2014) ("pursuant to the holding in Knapstad, charges in a criminal case may be dismissed for insufficient evidence prior to trial on motion by the defendant") (quoting Drafter's Comment to 2008 Amendment to CrR 8.3).

DISCUSSION

The State argues that the evidence was sufficient to establish the corpus delicti of the crime of indecent liberties. Therefore, it contends that the trial court erred in dismissing the case

A trial court's pretrial dismissal of criminal charges pursuant to a Knapstad motion, for failure to make out a prima facie case of guilt, is subject to de novo review. State v. Montano, 169 Wn.2d 872, 876, 239 P.3d 360 (2010). Here, in order to dismiss the State's case pursuant to Knapstad, the court must find insufficient evidence of the corpus delicti to support admission of the defendant's statements into evidence at trial. See Knapstad, 107 Wn.2d at 356-57.

"Corpus delicti" means the "'body of the crime'" and must be proved by evidence sufficient to support the inference that there has been a criminal act. State v. Brockob, 159 Wn.2d 311, 327, 150 P.3d 59 (2006) (quoting State v. Aten, 130 Wn.2d 640, 655, 927 P.2d 210 (1996)). The corpus delicti rule arose from judicial distrust of confessions. City of Bremerton v. Corbett, 106 Wn.2d 569, 576, 723 P.2d 1135 (1986). Courts feared that confessions would be uncritically accepted by juries, even if there was evidence that the admissions were involuntary, coerced, or untruthful. Aten, 130 Wn.2d at 656-57.

In Washington, courts may not consider the accused's incriminating statements unless the State has established the corpus delicti through independent proof.[4] State v. Ray, 130 Wn.2d 673, 679, 926 P.2d 904 (1996). "In other words, the State must present

---

[4] Washington courts have declined to adopt a more relaxed rule used by federal courts. Brockob, 159 Wn.2d at 328. Under the federal rule, the government need present only independent evidence sufficient to establish that the incriminating statement is trustworthy. Id.

evidence independent of the incriminating statement that the crime a defendant described in the statement actually occurred." Brockob, 159 Wn.2d at 328.

We review the trial court's corpus delicti determination de novo. State v. Pineda, 99 Wn. App. 65, 77-78, 992 P.2d 525 (2000). In doing so, we assume the truth of the State's evidence and view all reasonable inferences in the light most favorable to the State. Aten, 130 Wn.2d at 658. The independent evidence need not be sufficient to support a conviction, but it must provide "prima facie corroboration" of the charged crime. Brockob, 159 Wn.2d at 328. Prima facie corroboration of a defendant's incriminating statement exists if the independent evidence supports a "'logical and reasonable inference'" of the facts sought to be proved. Id. (quoting State v. Vangerpen, 125 Wn.2d 782, 796, 888 P.2d 1177 (1995)). In addition to corroborating a defendant's incriminating statement, the independent evidence must be consistent with guilt and inconsistent with a hypothesis of innocence. Id.

To satisfy the corpus delicti rule here, the State must provide independent evidence that demonstrates that a crime of indecent liberties occurred pursuant to RCW 9A.44.100(1)(b). See State v. Acheson, 48 Wn. App. 630, 636-37, 740 P.2d 346 (1987) (concluding that corpus delicti requires only proof that a crime was committed). "A person is guilty of indecent liberties when he. . . knowingly causes another person to have sexual contact with him . . . [w]hen the other person is incapable of consent by reason of being . . . physically helpless." RCW 9A.44.100(1)(b). "Sexual contact" means "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). Therefore, here, the State must show through independent evidence not only that Ruiz touched R.B.'s penis while

5

R.B. was physically helpless, but also that he did so, knowingly, for sexual gratification. See RCW 9A.44.100(1)(b).

Here, the State's evidence—independent of Ruiz's confession—amounts to the following: (1) Ruiz and R.B. went to sleep in separate rooms; (2) R.B. went to sleep alone and fully clothed; (3) while asleep and unable to consent to sexual contact,[5] someone else undressed him and made contact with his penis in such a manner that made it feel "weird"—i.e., similar to sensations he had experienced after oral sex—when he woke up; (4) others saw Ruiz on the same couch as R.B. in the middle of the night; (5) upon waking, R.B. found Ruiz sleeping in his lap, with his head in close proximity to R.B.'s exposed genitals and his hand on R.B.'s inner thigh; and (6) R.B. reported the incident to the police. From these facts, the State is entitled to the inference that Ruiz undressed R.B. and engaged in uninvited, unwanted sexual contact with him. These facts, and the inferences that can be drawn therefrom, are sufficient to satisfy the corpus delicti rule. See Ray, 130 Wn.2d at 679-80 (surveying Washington case law).

Washington courts have found sufficient corpus delicti in cases where the independent evidence consisted of eyewitness testimony—whether a victim's own observations or another's. See State v. Stuhr, 1 Wn.2d 521, 529, 96 P.2d 479 (1939). In Stuhr, an officer saw the suspect in a dark corner of a garage perform a "revolting" act with a young girl. Id. at 523. And, other witnesses observed the suspect and the child fleeing from the scene in different directions. Id. at 524. Thus, these eyewitness accounts

_____

[5] State v. Mohamed, 175 Wn. App. 45, 58-59, 301 P.3d 504 (2013) (explaining, "'The state of sleep appears to be universally understood as unconsciousness or physical inability to communicate unwillingness'" (alteration in original) (quoting State v. Puapuaga, 54 Wn. App. 857, 861, 776 P.2d 170 (1989).

6

established the corpus delicti for indecent liberties. Id. at 529. Here, two eyewitnesses saw Ruiz on the couch or kneeling by the couch near R.B. during the middle of the night, after everyone had gone to sleep. They may not have testified to seeing the sexual act, but their accounts corroborate R. B.'s statement about Ruiz presence.

Physical evidence—such as that of tangible injuries[6] or reports of pain[7]—can also satisfy the corpus delicti rule. State v. Biles is particularly instructive. 73 Wn. App. 281, 871 P.2d 159 (1994). A first degree child rape prosecution, Biles involved a defendant's admission that he "barely" penetrated his daughter when she was three or four years old. Id. at 282-83. The child's hearsay testimony indicated genital contact between herself and her father, and that "it hurt her and she cried." Id. at 285. But, when asked if her father ever went inside her privates, the daughter answered no. Id. at 283. Despite this, the Biles court concluded that the child's complaints of genital pain during sexual contact supported a logical and reasonable inference that "penetration" in fact occurred, which corroborated the confession. Id. at 285. Thus, the court concluded that the State presented sufficient evidence of the corpus delicti—i.e., penetration—to establish that a first degree rape of a child had occurred. Id. at 285.

Here, the trial court erred when it disregarded R.B.'s statements describing the lingering physical sensation he experienced. Analogous to the reports of pain—contemporaneous with sexual contact—in Biles, the lingering physical sensation

---

[6] See, e.g., Acheson, 48 Wn. App. at 637 (corpus delicti established where, in addition to lab technician's testimony that she observed sperm cell in specimen from minor victim's vaginal cavity, examining doctor noted "an extended hymen and redness and irritation in the vaginal area to an extent not likely to result from self-stimulation"); State v. Clevenger, 69 Wn.2d 136, 138-39, 417 P.2d 626 (1966) (jagged tear of vagina and adjacent tissues to three year old victim established the corpus delicti).
[7] State v. Biles, 73 Wn. App. 281, 284, 871 P.2d 159 (1994).

described by R.B. corroborates that contact with his penis in fact occurred. R.B. equated the physical sensation from the alleged incident to his previous experiences of oral sex with women. This comparison provides the basic premise of his case: the inference properly drawn is that someone other than himself touched his genitals.

The trial court's reliance on Ray to support its corpus delicti determination is misplaced. Ray voluntarily confessed that he molested his three year old daughter by forcing her to touch his penis. Ray, 130 Wn.2d at 675-76. Absent his confession, the trial court found there was no independent evidence of the crime, because there was no tangible injury and no eyewitness testimony, as the child was deemed incompetent to testify. See Id. at 676. The Ray court found that the fact that Ray made an emergency call to his sexual deviancy therapist after the alleged incident, together with other "sparse facts," failed to rule out Ray's criminality or innocence. Id. at 680-81. In holding that the State failed to establish the corpus delicti, the court reasoned, "[t]hese facts suggest that something out of the ordinary occurred, but it is a leap in logic to conclude that any kind of criminal conduct occurred let alone the specific conduct of first degree child molestation." Id. at 680.

Unlike Ray, here, the State offered evidence independent of Ruiz's confession. The corpus delicti rule dictates that the independent evidence need support only a "'logical and reasonable inference'" of the facts sought to be proved. Brockob, 159 Wn.2d at 328 (quoting Aten, 130 Wn.2d at 656). Here, the evidence in the record and the inferences drawn therefrom independently corroborate Ruiz's statements. The rule does not require that the independent evidence disprove all other potential explanations. But,

8

the independent evidence must be consistent with guilt and inconsistent with a hypothesis of innocence. Id.

The trial court, applying the reasoning in Ray, concluded that the State's evidence failed to rule out noncriminal causes of the contact. The court questioned what crime had occurred: "It could have been indecent liberties or rape by the defendant, or it could have been an incident of indecent exposure by the victim." The court postulated innocent explanations for each item of evidence. For example, the court suggested that R.B. could have pulled down his own pants. Regarding the reported sensation and stain, the court pointed to the "possibility that [R.B.] may have had a wet dream, or he may have been masturbating." Finding the State's evidence deficient, the trial court asked, "If the defendant was asleep and his hand was on the leg of the complaining witness, is that a crime? What crime would it be?" From its analysis, the court concluded that, just as in Ray, "there's no evidence that a crime occurred" because "the quantum of evidence was simply lacking."

The trial court misapplied Ray, thereby improperly denying the State the basic inferences to which it was entitled. R.B. complained of nonconsensual sexual contact and the prosecutor filed criminal charges on that basis. He reported that he awoke to find Ruiz in his lap. The State is entitled to an inference that until that moment, R.B. had been asleep, and therefore incapable of consenting to sexual contact. RCW 9A.44.010(5) ("'Physically helpless' means a person who is unconscious or for any other reason is physically unable to communicate unwillingness to an act."); State v. Mohamed, 175 Wn. App. 45, 58-59, 301 P.3d 504 (2013) (explaining, "'The state of sleep appears to be universally understood as unconsciousness or physical inability to communicate

9

unwillingness'" (alteration in original) (quoting State v. Puapuaga, 54 Wn. App. 857, 861, 776 P.2d 170 (1989)). R. B. reported that when he went to sleep his pants were up, zipped, and belted. The State is entitled to the inference from R.B.'s statement that his pants were unbuckled, unzipped, and lowered by someone else while he was asleep. He described the sensation he felt in his penis upon waking as similar to what he had experienced from oral sex. In the light most favorable to the State, this gives rise to an inference that R.B. was touched by another—not that he was masturbating or experiencing a "wet dream." R. B. went to sleep alone on the couch. He awoke to find Ruiz sleeping in his lap, with Ruiz's head in close proximity to R.B.'s exposed genitals and a hand on R.B.'s inner thigh. Others corroborate Ruiz's presence during the night by or on the couch. No other evidence suggests anyone else was in the room. In considering whether there was an innocent explanation for the State's evidence, the trial court evaluated the facts on a piecemeal basis—rather than reviewing the evidence as a whole and drawing the inferences in the light most favorable to the State. This was error.

Collectively, the independent evidence, assumed true and viewed in the light most favorable to the State, supports a logical and reasonable inference that R.B. was subjected to unauthorized sexual contact while he was physically helpless. From this, it takes no "leap in logic" to conclude that Ruiz committed such actions—and that he did so for the purpose of sexual gratification. See Ray, 130 Wn.2d at 680. Thus, the totality of the independent evidence, viewed in the light most favorable to the State, supports the inference that Ruiz touched R.B.'s penis—and that he knowingly did so for sexual gratification. Accordingly, the State established the corpus delicti of the crime of indecent liberties.

The trial court erred in dismissing the case pursuant to <u>Knapstad</u> and CrR 8.3 for insufficient corpus delicti. We reverse.

Appelwick, J

WE CONCUR:

Spearman, C.J.

Dwyer, J.