FILED
COURT OF APPEALS
DIVISION II

2014 JAN 22 AM 9: 17

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43456-3-II |
| Respondent, | |
| v. | |
| KELLY EARNEST MERZ, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. – Kelly Earnest Merz appeals his convictions of premeditated first degree murder and sexually violating human remains, arguing that insufficient evidence supports the latter conviction under the corpus delicti rule and that the trial court erred by rejecting his proposed jury instruction on premeditation. Merz raises additional claims of error in a pro se statement of additional grounds (SAG). We hold that there was sufficient corroborating evidence to support Merz's conviction of sexually violating human remains, that the trial court's instruction properly defined premeditation for the jury, and that Merz's pro se claims of error lack merit. We affirm both convictions.

## FACTS

On September 12, 2011, Merz called his ex-wife and told her he had killed his roommate. Merz was crying and explained that he had "lost it." 2 Report of Proceedings (RP) at 215. His ex-wife reported to the police what Merz had said.

Deputy James Oetting went to Merz's apartment to investigate the report. When the deputy approached the apartment complex, Merz walked toward him with his hands up. Merz's face was scratched, and he appeared nervous. Merz said he had killed his roommate, Cori Lewis.

Merz explained that he and Lewis had argued in the doorway of her bedroom. When Lewis head-butted Merz, he tried to break her neck. When that failed, he shot her in the head with his pistol. He put some bags over her head to contain the bleeding, threw her body out the window, and dragged it to his car. After rejecting an initial location, he buried the body in a remote area.

Merz then showed the deputy where he had left evidence along the way to the burial site. Investigators recovered several items at various locations, including bloody clothing, shell casings, a plastic bag, a shovel, and the gun. Investigators also found Lewis's body where Merz said he had buried it. Lewis was naked, with her clothing underneath her body.

In a recorded and transcribed confession, Merz described the murder and subsequent events. Merz said he removed Lewis's underpants and kissed her vagina before burying her because it looked pretty. Concerned that he might have left DNA, he then rubbed dirt into the vaginal area.

The State charged Merz by amended information with premeditated first degree murder while armed with a firearm (count I) and sexually violating human remains (count II). The trial court denied Merz's pretrial motions to obtain a different attorney and to represent himself. Following a CrR 3.5 hearing, the trial court ruled that Merz's pretrial statements were admissible. And, finding sufficient evidence to establish the corpus delicti of count II independent of Merz's confession, the court denied his separate motion to suppress the confession and dismiss that count.

Merz's ex-wife and several law enforcement officers testified to the facts set forth above. In addition, the jury heard the recording of Merz's confession and reviewed its transcript. A medical examiner testified that the victim was found naked, except for the bra around her neck,

and that there was a small pile of dirt at the vaginal entrance. At the close of the State's case, the trial court again denied Merz's corpus deliciti motion.

Merz, the single defense witness, testified that he blacked out before Lewis opened her bedroom door but that he also remembered shooting her. He complained that the recording of his confession had been "doctored." 5 RP at 642.

The trial court refused to instruct the jury on manslaughter and instead gave an instruction on the lesser-included offense of second degree murder. The court also rejected Merz's proposed instruction on premeditation and instead gave the following pattern instruction:

> Premeditated means thought over beforehand. When a person, after any deliberation, forms an intent to take human life, the killing may follow immediately after the formation of the settled purpose and it will still be premeditated. Premeditation must involve more than a moment in point of time. The law requires some time, however long or short, in which a design to kill is deliberately formed.

Clerk's Papers (CP) at 83.[1]

After the jury found Merz guilty as charged, the trial court imposed a standard range sentence of 393 months. Merz appeals.

---

[1] Merz's proposed instruction read as follows:

> Premeditated means thought over beforehand. Premeditation must involve more than a moment in point of time. Premeditation is the deliberate formation of and reflection upon the intent to take a human life and involves the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short or long, in which a design to kill is deliberately formed. Mere opportunity to deliberate is not sufficient to support a finding of premeditation.

CP at 47.

ANALYSIS

I.   CORPUS DELICTI

Merz first challenges the sufficiency of the evidence supporting his conviction for sexually violating human remains, arguing that the trial court should have excluded his confession because the independent evidence failed to corroborate it. We review this issue de novo. *State v. McPhee*, 156 Wn. App. 44, 60, 230 P.3d 284 (2010).

The corpus delicti rule tests the sufficiency of evidence, other than the defendant's confession, to corroborate that confession.[2] *State v. Dow*, 168 Wn.2d 243, 249, 227 P.3d 1278 (2010). A defendant's incriminating statement is not sufficient to establish that a crime occurred. *State v. Brockob*, 159 Wn.2d 311, 328, 150 P.3d 59 (2006). The purpose of the corpus deliciti rule is to prevent defendants from being unjustly convicted based on confessions alone. *Dow*, 168 Wn.2d at 249.

To satisfy the corpus deliciti rule, the State must present evidence independent of the incriminating statement that shows the crime described in the statement occurred. *Brockob*, 159 Wn.2d at 328. In determining whether this standard is satisfied, we review the evidence in the light most favorable to the State. *Brockob*, 159 Wn.2d at 328. The independent evidence need not be sufficient to support a conviction but must provide prima facie corroboration of the crime described in a defendant's incriminating statement. *Brockob*, 159 Wn.2d at 328. Prima facie

---

[2] RCW 10.58.035 applies a more relaxed trustworthiness standard to the admission of a defendant's confession. *Dow*, 168 Wn.2d at 251-52. Merz focused below, as he does on appeal, on the sufficiency of the independent evidence rather than the admissibility of his confession. *See Dow*, 168 Wn.2d at 253-54 ("any departure from the traditional corpus delicti rule under RCW 10.58.035 pertains only to admissibility [of the confession] and not to the sufficiency of evidence required to support a conviction"). Merz argued that his statements were inadmissible because there was insufficient evidence to corroborate them. Although he asserts that the trial court should have addressed the factors in RCW 10.58.035, we see no error in its failure to do so where Merz did not renew his admissibility challenge after his sufficiency challenge failed.

4

corroboration exists if the independent evidence supports a "logical and reasonable inference" of the facts the State needs to prove. *State v. Vangerpen*, 125 Wn.2d 782, 796, 888 P.2d 1177 (1995). The corpus delicti can be proved by direct or circumstantial evidence. *State v. Aten*, 130 Wn.2d 640, 655, 927 P.2d 210 (1996). Circumstantial evidence proving the corpus delicti must be consistent with guilt and inconsistent with innocence. *Aten*, 130 Wn.2d at 660.

To convict Merz of sexually violating human remains, the State had to prove that he had sexual contact with a dead human body. RCW 9A.44.105(1). In this context, sexual contact is any touching of the sexual or other intimate parts of a dead human body for sexual gratification. RCW 9A.44.105(2)(b). In arguing that the independent evidence was insufficient to infer that such contact occurred, Merz relies on *State v. Ray*, 130 Wn.2d 673, 926 P.2d 904 (1996).

Ray told police that he placed his daughter's hand on his penis and was charged with first degree child molestation. *Ray*, 130 Wn.2d at 675-76. The Supreme Court held that the following evidence was insufficient to prove the corpus delicti of that offense without Ray's confession:

> "At approximately one in the morning, three-year-old L.R. came to her parents' bedroom and asked for a glass of water. Ray, probably nude, accompanied his daughter back to her room. Ray later returned to his room upset and crying. Ray awakened his wife and talked to her. His wife became upset and rushed to check on L.R. After further discussion with his wife, Ray, who was still upset, placed an emergency call to his sexual deviancy counselor."

130 Wn.2d at 680 (quoting *State v. Ray*, 33582-1-I, slip op. at 4 (Wn. App. Nov. 6, 1995)).

While these facts suggested that something out of the ordinary had occurred, it was a "leap in logic to conclude that any kind of criminal conduct occurred, let alone the specific conduct of first degree child molestation." *Ray*, 130 Wn.2d at 680. Without any independent evidence that Ray had molested his daughter, the State had failed to prove the corpus delicti.

*Ray*, 130 Wn.2d at 681. The Supreme Court affirmed the trial court's exclusion of Ray's confession and its dismissal of the charge. *Ray*, 130 Wn.2d at 681.

We agree with the State that no leap in logic is required to conclude, independent of Merz's statements, that criminal conduct did occur. When viewed in the light most favorable to the State, independent circumstantial evidence shows that Merz had sexual contact with the victim's body. Although a few items of the victim's clothing were found strewn along the way, her sweatpants, underpants, and jacket were found underneath her body, and her bra was found around her neck. This indicates that the victim was clothed when Merz brought her to the burial site and that he then removed her clothing. The evidence also shows that a small pile of dirt was found at the entrance to the victim's vagina, which serves as further corroboration that criminal contact occurred. Although this evidence is not sufficient to prove the offense of sexually violating human remains, it is sufficient to corroborate Merz's confession to that crime. The trial court did not err by denying Merz's motions to dismiss under the corpus delicti rule.

II.    PREMEDITATION INSTRUCTION

Merz contends that the trial court erred by refusing to give his proposed instruction on premeditation and in choosing instead to give an instruction based on 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 26.01.01, at 360 (3d ed. 2008) (WPIC).

We review a trial court's refusal to send a proposed instruction to the jury to determine whether it was manifestly unreasonable or based on untenable grounds. *State v. Buzzell*, 148 Wn. App. 592, 602, 200 P.3d 287 (2009). Jury instructions are adequate if they allow a party to argue its theory of the case and do not mislead the jury or misstate the law. *State v. Stevens*, 158 Wn.2d 304, 308, 143 P.3d 817 (2006).

6

Washington appellate courts have upheld WPIC 26.01.01, the pattern instruction on premeditation, on numerous occasions. *See, e.g., State v. Clark*, 143 Wn.2d 731, 770-71, 24 P.3d 1006 (2001); *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 317, 868 P.2d 835, *clarified on other issues*, 123 Wn.2d 737, 870 P.2d 964 (1994); *State v. McDaniel*, 155 Wn. App. 829, 856 n.21, 230 P.3d 245 (2010). Merz cites no case law that post-dates *Clark* and *McDaniel*, and we decline to consider this challenge further.

## III. STATEMENT OF ADDITIONAL GROUNDS

Merz makes several claims of error in his pro se SAG. He argues first that the trial court erred by denying his request to represent himself at trial.

We review the denial of such a request to determine whether that denial was manifestly unreasonable or based on untenable grounds. *State v. Madsen*, 168 Wn.2d 496, 504, 229 P.3d 714 (2010). Courts must honor a properly made request for self-representation, but because a defendant waives the right to counsel by invoking the right to represent himself, courts also must "indulge in 'every reasonable presumption' against waiver of the right to counsel." *State v. Thompson*, 169 Wn. App. 436, 465, 290 P.3d 996 (2012) (quoting *Madsen*, 168 Wn.2d at 504), *review denied*, 176 Wn.2d 1023 (2013). The request to proceed pro se therefore must "'be unequivocal, knowingly and intelligently made, and . . . timely.'" *Thompson*, 169 Wn. App. at 465 (quoting *State v. Vermillion*, 112 Wn. App. 844, 851, 51 P.3d 188 (2002)). To determine the validity of such a request, the trial court must examine the facts and engage in a colloquy to ensure that the defendant understands the risks and consequences of self-representation. *Thompson*, 169 Wn. App. at 465 (citing *State v. Hemenway*, 122 Wn. App. 787, 791, 95 P.3d 408 (2004)).

During a pretrial hearing, Merz voiced his unhappiness with one of his appointed attorneys, but the trial court declined to appoint a different attorney. At the CrR 3.5 hearing two weeks later, Merz asked to represent himself. During an extensive colloquy with the court, Merz complained that he had no faith in his attorneys but admitted that he had no knowledge of court rules and procedures. He did not know how to cross examine a witness and did not understand how self-representation would affect his right to remain silent. Merz admitted that he had never sat through a trial. He was not ready to go to trial and would need a continuance of "[p]robably two months." 1 RP at 21. The State responded that it would object to any continuance, as it had five witnesses waiting for the CrR 3.5 hearing and other witnesses ready to testify at trial the following week. The court denied Merz's request because it was untimely and not voluntarily made.

We do not see this decision as manifestly unreasonable. Merz waited until the date of the CrR 3.5 hearing to make his request, with trial set to begin the following week. It was clear that he did not fully understand the proceedings. We reject this claim of error.

Merz also claims that the recording of his confession, the transcript of that recording, and the trial transcript have been altered. The record does not support this claim and we will not address it further. If Merz has independent evidence of any such alteration, he should submit it with a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Merz makes several complaints about his trial and appellate counsel. To prove ineffective assistance of counsel, a defendant must show that his attorney's performance was deficient and that the deficiency was prejudicial. *McFarland*, 127 Wn.2d at 334-35. Merz complains that he gave his appellate counsel a 27-page description of what really happened and

told her to contact a witness whose police statement had been altered. As stated, we do not review evidence that is not part of the record below, and appellate counsel was not deficient in failing to pursue or examine such evidence.

Merz next asserts that his trial attorney would not allow him to introduce character witnesses on his own behalf or witnesses who would testify about the victim's drug use. We see no deficient performance in this regard. Evidence of Merz's truthful character was inadmissible in the absence of prior evidence attacking his character, and the State introduced no such evidence. ER 608; *State v. Harper*, 35 Wn. App. 855, 860, 670 P.2d 296 (1983). Defense counsel correctly agreed with the State that evidence of the victim's drug use was inadmissible unless the State elicited testimony that she did not use drugs. ER 401; 404(a)(2). The State elicited no such testimony.

Finally, Merz complains that his co-counsel was nonexistent and that his primary attorney did not (1) return his phone calls, (2) review the police statement and other evidence with him, (3) consider manslaughter as part of a possible plea deal, (4) allow him a continuance, and (5) explore the possibility of giving him an MRI (magnetic resonance imaging). He also alleges that his attorney made him sign a witness list.

Defense counsel informed the court that Merz was evaluated for mental health issues before trial. Defense counsel also proposed an instruction on manslaughter that the trial court rejected. Even if Merz's remaining allegations are accurate, he does not show how these deficiencies were prejudicial in light of the State's overwhelming evidence and Merz's own testimony. Merz does not succeed in showing that he received ineffective assistance of counsel.

9

Finally, Merz ends his SAG with a statement of "what really happened." SAG at 12. We again observe that we review only the record produced at trial.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Penoyar, J.

We concur:

_____
Hunt, J.

_____
Worswick, C.J.